Tandi FOX, By Her Father and Next Friend, Edward Fox and Individually, Plaintiffs-Appellants,

v.

STANLEY J. HOW AND ASSOCIATES, INC., A Nebraska Corporation, Defendant-Appellee.

No. 2–64530.

Court of Appeals of Iowa.

May 26, 1981.

Richard D. Crotty, Council Bluffs, for plaintiffs-appellants.

Waldine H. Olson of Schmid, Ford, Mooney & Frederick, Omaha, Neb., for defendant-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

OXBERGER, Chief Judge.

Plaintiffs, Tandi Fox and Edward Fox, appeal from trial court's order sustaining defendant's, Stanley J. How and Associates, Inc., motion for directed verdict in this negligence action. We reverse and remand.

Tandi Fox sustained injuries when she ran into a window in the vestibule area of Mercy Hospital in Council Bluffs, Iowa on May 17, 1977. She and her father brought this action for money damages against the defendant architectural firm that designed the hospital. Trial was commenced on December 11, 1979. At the close of the plaintiffs' case, defendant moved for directed verdict, and the court sustained the motion. Plaintiffs filed timely appeal. Our review is on error assigned. Iowa R.App.P. 4.

I. Plaintiffs assert trial court erred in sustaining defendant's motion in limine which resulted in the exclusion of plaintiffs' expert testimony. We agree. On September 24, 1979, a pre-trial order was filed fixing the closing and completion of discovery on November 1, 1979. On October 29, 1979, defendant deposed plaintiffs' expert. He, at that time, was unable to voice a conclusion or opinion as to design deficiency. At the end of the deposition, the following dialogue was recorded:

DEFENDANT'S ATTORNEY: Now I would like to have some assurance from you, Mr. Sievers, that having done that, that you will come to some conclusions within a reasonable period of time so that we can know exactly where we are in this case, which is coming up for trial in December?

EXPERT: Yes.

DEFENDANT'S ATTORNEY: You indicated to me previously two weeks, and I assume you feel that is a reasonable period of time, and so do I. Do I have your assurance that you will do that?

EXPERT: I will strive to. Now, I have no control over my being scheduled out of town.

DEFENDANT'S ATTORNEY: I understand that.

EXPERT: You realize that?

DEFENDANT'S ATTORNEY: I understand.

EXPERT: All I can say is I will try.

DEFENDANT'S ATTORNEY: I would like to have the deposition continued indefinitely. Is that a "yes"?

PLAINTIFF'S ATTORNEY: That is a "yes."

DEFENDANT'S ATTORNEY: And Mr. Sievers, we are going to continue the deposition and at such time as you reach some conclusions you will agree to appear again for your deposition here in the Federal Building?

EXPERT: Yes.

No motion was made by defendant to compel discovery prior to the November 1st deadline. On December 6, 1979, defendant was apprised by plaintiffs that the expert had continued his investigation and was available for further deposition. On December 7, 1979, defendant deposed the expert and heard testimony of his reliance on a Building Code section to show a design deficiency. This deposition began with the following dialogue:

DEFENDANT'S ATTORNEY: Would you state your name for our record again, please?

EXPERT: Heinz W. Sievers.

DEFENDANT'S ATTORNEY: Mr. Sievers, do you understand that this is a continuation of your deposition which we commenced on October 29, 1979?

EXPERT: Yes, sir.

DEFENDANT'S ATTORNEY: Mr. Sievers, do you have any additional information regarding this case that you did not have on October 29, 1979?

EXPERT: Yes. I found out the, ah, structure was designed with reference to the Uniform Code, 1967 Edition.

On December 11, 1979, the date set for trial, defendant made an oral motion in limine to exclude the expert's opinion reached after the November 1st discovery closing date. The trial court sustained the motion emphasizing the need to comply with a pre-trial order. At the close of plaintiffs' evidence at trial, the court sustained defendant's motion for directed verdict finding the evidence insufficient to present to the jury for their determination of defendant's duty or breach of duty. The court further acknowledged the defendant's standard of care was a matter for expert testimony which was not presented.

■ While we recognize a trial court's inherent power to enforce pre-trial orders by appropriate sanctions, *see Rowen v. LeMars Mutual Ins. Co.*, 282 N.W.2d 639, 646 (Iowa 1979), we find the sanction in this case is inappropriate due to the defendant's own conduct. Defendant requested the continuation of the expert's deposition. The plaintiffs were obligated to inform defendant of updated information pursuant to Iowa R.Civ.P. 125(a)(2). When defendant further deposed the expert after the discovery deadline, this action was contrary to the pre-trial order provision. Upon eliciting unfavorable evidence, defendant sought to prohibit what it had advanced. Defendant did not seek the court's protection before the second deposition, nor did it ask for a continuance following the deposition. Prejudicial surprise to defendant under these circumstances is not a viable contention. *See Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 904–905 (3d Cir. 1977).

■ Although trial courts have the power and discretion to impose sanctions, it is incumbent upon a reviewing court to scrutinize the exercise of that discretion and to confine the exercise to reasonable limits. *See* Waterman, *An Appellate Judge's Approach When Reviewing District Court Sanctions Imposed for the Purpose of Insuring Compliance with Pre-Trial Orders*, 29 F.R.D. 420, 426 (1961). The preclusion of evidence is considered a harsh sanction to be imposed. *Id.* at 425. *See also Note, Federal Pre-Trial Practice: A Study of Modification and Sanctions*, 51 Geo.L.J. 309, 332–337 (1963). In this case, exclusion of the expert testimony had a direct bearing on the dismissal of plaintiffs' case. Other sanctions, including contempt or cost assessments, might have been utilized to resolve the problem. We find the exclusion of expert testimony was too strict and unnecessary under the circumstances. We, therefore, reverse and remand for new trial. Trial court is not prohibited by this decision in reviewing whatever noncompliance of the pre-trial order occurred and imposing appropriate sanctions upon either party.

II. Plaintiffs' allege trial court's conclusion that defendant architect owed no duty of care to a public invitee was in error. As this issue will appear at re-trial, we will address it. We adhere to the general law in this regard and find the following to be applicable in this case: "An architect may be held liable for negligence in failing to exercise the ordinary skill of his profession, which results in the erection of an unsafe structure whereby anyone lawfully on the premises is injured. An architect's liability for negligence ... may be based upon his supervisory activities or upon defects in the plans." *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 913 (Iowa 1975).

We reverse the ruling sustaining defendant's motion in limine and remand for new trial consistent with this opinion.

REVERSED AND REMANDED.