Edward SULLIVAN, as Executor of the Estate of Barbara Gayle Sullivan and Paul Edward Sullivan, Deceased, and Edward Sullivan, Individually, Appellees,

v.

CHICAGO AND NORTHWESTERN TRANSPORTATION COMPANY, Successor in Interest to Chicago and Northwestern Railway Company, Appellant,

T.J. Moyer and Jim Huddleston, Defendants.

No. 67872.

Supreme Court of Iowa.

Nov. 24, 1982.

As Modified on Denial of Rehearing Dec. 17, 1982.

Brent B. Green and Arthur E. Gamble of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for appellant.

Michael R. Mundt of Franck, Mundt, Nepper & Franck, Denison, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

HARRIS, Judge.

Permission for this interlocutory appeal was granted to review the trial court's interpretation of Iowa Code § 307.26(5)(b) (1981), and also to review a number of pretrial rulings on discovery. Except for one of the several rulings on discovery, which we reverse in part, we affirm the trial court.

■ Barbara Sullivan and her three-year-old son Paul were killed when their vehicle was struck by a train owned by the defendant railway company (the railroad). The executor of the victims' estate brought this wrongful death action against the railroad and against the engineer and brakeman of the train. The colliding train was proceeding on a track owned by the railroad. It is claimed that an adjacent siding, which it also owned, was occupied by another of its trains waiting for the colliding train to pass. Plaintiff alleges the waiting train prevented the motorist from seeing the colliding train.

It became important whether the accident scene was an "extra-hazardous crossing" when a train was waiting on the siding so as to block the view of a motorist so as to require extraordinary safety precautions. Each side eventually obtained the services of an expert. Plaintiff's expert was prepared to testify that special safety precautions were needed. Defendants' expert was prepared to testify that the ordinary precautions in place at the scene were adequate.

The railroad filed a motion to adjudicate law points, Iowa R.Civ.P. 105, in which it requested the court to determine the crossing could not be considered extra-hazardous so as to require special precautions. The motion was based on Iowa Code § 307.-26(5)(b) which provides: "A railroad crossing shall not be found to be particularly hazardous for any purpose unless the department [of transportation] has determined it to be particularly hazardous." It was shown the department of transportation never made such a determination.

In response to this motion plaintiff clarified his position by stating he did not argue that the crossing was permanently extrahazardous and in need of special precautions such as electronic signals. He only argued that the crossing was extra-hazardous at those times when a second train was parked on the siding and that a flagman was necessary at those times. The trial court, noting that plaintiff would be bound by the position taken in the clarification, overruled the railroad's motion for adjudication of law points.

I. The trial court ruling was an interpretation of a statutory amendment enacted in 1977. 1977 Iowa Acts ch. 103 § 2. The amendment followed by only a few years an extensive statutory revision which established (*See* Code ch. 307) the present department of transportation (DOT). 1974 Iowa Acts ch. 1180 §§ 1–30.

Prior to the amendment in question our settled rules for particularly or extraordinarily hazardous crossings were well understood.[1] In *Maier v. Illinois Central Railroad Company,* 234 N.W.2d 388, 391 (Iowa 1975), we summarized them as follows:

Case law on a railroad's duty to give warnings in addition to minimum statutory requirements has become well settled. It was summarized in *Wickman v. Illinois Central R. Co.,* 253 Iowa 912, 917, 114 N.W.2d 627, 629–630 (1962) as follows:

"... [A] railroad company is not required to install a signalling device or station a flagman at every railway crossing. (Authority).... [S]tatutory requirements for warnings at railway crossings, as the cross bucks, ringing the bell and blowing the whistle, are minimum only; ... conditions may exist which require more. (Authorities).

"A third principle, elementary of course, is that in this class of cases our duty is not to decide whether the crossing in question was in fact extraordinarily hazardous so that some warning beyond the statutory requirements was called

for, but only to say whether there was substantial evidence from which a jury might so find. (Authorities).

"The general rule also is that whether the condition of a crossing, with its surroundings, is such as to call for additional warning devices, or flagmen, is a question for the jury unless reasonable minds could reach only one conclusion from the evidence. (Authorities)."

We applied these principles again in *Kuper v. Chicago & North Western Transp. Co.,* 290 N.W.2d 903, 905–06 (Iowa 1980). In *Kuper* we also applied a well established principle that crossing signs required by section 327G.2 delineate only a minimum railroad duty and do not establish a ceiling. *Id.* at 905.

In 1977 the legislature amended Code section 307.26(5) to explain the duties and responsibilities of the railroad transportation division of the DOT. Subsections a and b, together with their introductory phrase, were added. The provision now reads:

5. Advise and assist the director in the conduct of research on railroad-highway grade crossings and encourage and develop a safety program in order to reduce injuries or fatalities including, but not limited to, the following:

a. The implementation of a program of constructing rumble strips at grade crossings on selected hard surface roads.

b. The establishment of standards for warning devices for particularly hazardous crossings or for classes of crossings on highways, which standards are designed to reduce injuries, fatalities and property damage. Such standards shall regulate the use of warning devices and signs which shall be in addition to the requirements of section 327G.2. Implementation of such standards shall be the responsibility of the government agency or department or political subdivision having jurisdiction and control of the highway and such implementation shall be deemed adequate for the purposes of railroad grade

---

1. Ordinary crossings call for warning signs, Iowa Code § 327G.2 (1981) and the blowing of

a whistle, Code § 327G.13.

crossing protection. The department, or the political subdivision having jurisdiction, may direct the installation of temporary protection while awaiting installation of permanent protection. A railroad crossing shall not be found to be particularly hazardous for, any purpose unless the department has determined it to be particularly hazardous.

We have never been called upon to interpret the amended statute, though we did point out that it had been too recently adopted to affect our holding in *Kuper,* 290 N.W.2d at 906.

The subsections are stated as examples only of the sort of advice and assistance the administrator of the railroad division is expected to provide to the DOT director. It is apparent that other administrative programs aimed at the reduction of injuries or fatalities were also contemplated.

The railroad points to the broad language in the last sentence of the amended provision: "A railroad crossing shall not be found to be particularly hazardous *for any purpose* unless the department has determined it to be particularly hazardous." (Emphasis added.) The railroad maintains that the legislature wrote "sweeping changes into the railroad grade crossing law" by taking the extra-hazardous crossing determination from juries and placing it in the hands of the administrative agency. It argues the change was warranted by "modern day safety needs" of rail and motor traffic, as well as the "complex engineering considerations present at every railroad crossing." It is argued that the legislature was dissatisfied with our past application of the common law rules which, it is said, resulted in virtually all hazardous crossing cases being submitted for determination by a jury.

It seems curious that, if the legislature really intended the crucial and sweeping changes the railroad suggests, it would do so in the manner and at the place suggested. The rules governing negligence claims arising from railroad crossing accidents were long and painstaking in development. The cases, and the rules derived from them,

date from early statehood. The change perceived by the railroad would shift responsibility, and presumably tort liability, from railroads to the public. And it is said that this is done by a sentence added to the second of two mere examples of advice—in an incomplete listing—that an agency division is required to give its director.

The question, posing the literal wording of the sentence against considerations raised by its placement, requires no answer here. Like the trial court we are persuaded that the statute does not serve the railroad as a defense to plaintiff's assertion in this suit. At most the provision could apply only to permanent conditions at a crossing. It does not lift from railroads the responsibility to warn of conditions made extra-hazardous by a temporary or transitory situation of the railroad's making.

■ Plaintiff is claiming that a *flagman* should have been posted at the crossing during the time the second train was on the siding so as to obstruct the view of plaintiff's decedent. The word "flagman" is not mentioned in the section, which refers only to "devices." Plaintiff argues that the omission of any reference to a flagman is not accidental. Accordingly, he concludes, there was no legislative intent to overturn the common law doctrine that required the use of flagmen in certain circumstances.

Under the general rules of statutory construction, *Iowa National Industrial Loan Co. v. Iowa State Dept. of Revenue,* 224 N.W.2d 437, 440 (Iowa 1974), we agree with plaintiff. The trial court was right in overruling the motion.

II. The parties argue a question which has not yet been presented to the trial court. Plaintiff wishes to introduce at trial evidence that the railroad has an operating rule which requires the presence of a flagman at crossings when another train obstructs the view. In *Pappas v. Evans,* 242 Iowa 804, 810, 48 N.W.2d 298, 302 (1951), we held such evidence inadmissible. *See also Waider v. Chicago R.I. & P.R. Co.,* 10 F.R.D. 376, 379 (S.D.Iowa 1950); *Gagnier v. Bendixen,* 439 F.2d 57, 62 (8th Cir.1971) (apply-

ing Minnesota law). We decline to give an advisory opinion on a question not yet presented to the district court.

III. The railroad says it initially decided not to hire a crossing expert, at least until after it had deposed plaintiff's expert. In an order dated October 2, 1981, the trial court disallowed the taking of a deposition of plaintiff's expert and, on October 6, set trial for February 9, 1982. The railroad then set about finding an expert of its own and finally obtained one on January 14, 1982. It then promptly identified the expert and gave the substance of his testimony to plaintiff. On January 26, 1982, the trial court ruled that the railroad had consciously withheld the name of its expert until three weeks before trial and excluded the expert's testimony as a sanction for the railroad's abuse of discovery.

When the railroad answered plaintiff's interrogatories it left out the name of an eyewitness (Weets) who would testify that no train was on the siding at the time of the accident. The railroad maintained this omission was inadvertent. In January of 1982, when it is said the omission was discovered, the railroad promptly supplemented its answers to plaintiff's interrogatories. In the order of January 26, 1982, the trial court excluded Weets's testimony (together with the testimony of two other previously unidentified witnesses). The railroad appeals the exclusion of Weets's testimony. The railroad alleges plaintiff had actual knowledge of Weets as early as March 19, 1981, when Weets was mentioned in a deposition (by her maiden name) as a witness.

■ The imposition of discovery sanctions by a trial court is discretionary and will not be reversed unless there has been an abuse of discretion. *E.g., Suckow v. Boone State Bank & Trust,* 314 N.W.2d 421, 425 (Iowa 1982); *White v. Citizen's National Bank of Boone,* 262 N.W.2d 812, 816 (Iowa 1978). The railroad argues the trial court did abuse its discretion in the exclusion of the testimony of its crossing expert and of Weets.

■ The railroad argues that Iowa R.Civ.P. 134(b) is no authority for the sanction. That rule allows sanctions for a failure to comply with a court *order* and there was no discovery order entered here. Rule 134 is not so all inclusive as the railroad suggests. We have recognized, aside from rule 134, violations of discovery rules alone may warrant sanctions. *White,* 262 N.W.2d at 816. Iowa R.Civ.P. 125 (supplementation of responses) seems to have been violated by the railroad. Under *White,* 262 N.W.2d 816, sanctions were appropriate for its violation.

We have been slow to find an abuse of discretion. In *Suckow,* 314 N.W.2d at 425–26, we reviewed nine prior discovery sanction cases and noted an abuse of discretion finding in only three, usually upon dismissal. *See also R.E. Morris Investments, Inc. v. Lind,* 304 N.W.2d 189, 191 (Iowa 1981) (striking party's demand for jury trial was inappropriate discovery sanction under rule 134(b)(2)); *Fox v. Stanley J. How & Assoc.,* 309 N.W.2d 520, 522 (Iowa App.1981) (rejecting defendant's attempt to exclude expert's opinion obtained after discovery closing date).

We find no abuse. The railroad learned in September 1980 that plaintiff had retained an expert to testify that the crossing was extra-hazardous. It waited, according to its own version of facts, until January of 1982 (three weeks before trial) to retain its own expert. In the meantime it continually sought to depose plaintiff's expert.

Exclusion of Weets's testimony, while harsh, does not seem to be an abuse either. The railroad answered interrogatories in September of 1980 in which it failed to disclose Weets's name as an eyewitness. An accident report filed by the crew listed Weets's maiden name as an eyewitness and was shown to plaintiff in March of 1981. The railroad argues plaintiff had actual knowledge of Weets from that point on. On the other hand the railroad claims it did not know of Weets when it answered plaintiff's interrogatories in September of 1980. It is not reasonable for the railroad to ar-

gue that the plaintiff should be charged with the knowledge of Weets and it should not.

The railroad also argues that even if plaintiff was prejudiced by the identification or testimony of the two witnesses he had ample opportunity to cure the prejudice before trial. *See Meyers v. Pennypack Woods Home Ownership Assoc.,* 559 F.2d 894, 904–05 (3rd Cir.1977) (reversing trial court's exclusion of testimony where plaintiff had three weeks to minimize prejudice by deposing new witnesses but failed to do so); *Fox,* 309 N.W.2d at 522 (approving *Meyers*). We cannot say the trial court abused its discretion in rejecting this contention either. Three weeks, while not the eve of trial, is a relatively short period when contrasted with the long period discovery had then taken. Plaintiff had expended considerable efforts in trial preparation. We cannot say the trial court was wrong in refusing to compel plaintiff to risk changing a trial strategy so long in preparation. The railroad should have shown its hand during the period of discovery as plaintiff showed his.

IV. On August 21, 1981, the railroad filed a motion under Iowa R.Civ.P. 122(d)(1)(B) for further discovery of facts known and opinions held by plaintiff's crossing expert. The trial court overruled the motion October 2, 1981, noting plaintiff answered interrogatories concerning the crossing expert the previous year. The trial court considered the motion untimely and also considered it unfair for plaintiff's crossing expert to be subjected to further discovery when the railroad's crossing expert had not yet been identified.

The railroad orally renewed the motion January 26, 1982, after it had identified its expert. The trial court did not rule on the renewed motion, and the failure is assigned as error. The assignment is not well taken for two reasons.

■ The railroad believes the effect of the failure to reconsider the earlier motion for further discovery was to overrule the motion and argues the refusal was an abuse of discretion. In *Recker v. Gustafson,* 271 N.W.2d 738, 739 (Iowa 1978), we pointed out that a motion to reconsider or set aside a previous order is not appealable. In any event error is not preserved when a motion is not ruled upon by the trial court and no timely request or demand for a ruling is made. *Linge v. Ralston Purina Co.,* 293 N.W.2d 191, 195 (Iowa 1980); *Stuart v. State ex rel Jannings,* 253 N.W.2d 910, 914 (Iowa 1977); *Fetters v. Degnan,* 250 N.W.2d 25, 31 (Iowa 1977).

■ V. Plaintiff hired a handwriting expert (Barton) who examined various documents such as the train dispatcher's log. Barton will not be called to testify at trial. In early January of 1982 the railroad filed a deposition notice and requested a subpoena compelling Barton to appear for a deposition.[2] In response to the notice and request for subpoena plaintiff filed a motion to suppress the taking of Barton's deposition. The motion was sustained and the railroad assigns the ruling as error.

A special rule governs discovery of facts known and opinions held by experts who are not expected to testify:

(d) Except as provided in R.C.P. 133, discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (a) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

. . . .

(2) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in R.C.P. 133 [report of examining physician] or upon a showing

2. The railroad also filed a motion for further discovery of facts known and opinions held by Barton. There was no trial court ruling on the motion for further discovery. Under the principles outlined in *Linge,* 293 N.W.2d at 195, discussed above, there is no order from which to appeal.

of *exceptional circumstances* under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Iowa R.Civ.P. 122(d)(2) (emphasis added).

The question becomes whether the railroad has shown exceptional circumstances which overcome the general prohibition in the rule. We seem never to have discussed the exceptional circumstances requirement of rule 122. Cases interpreting federal rule 26(b)(4)(B) are illustrative because the federal rule employs the same language as our rule 122(d)(2). *See* 48 F.R.D. 457, 462 (1970). Under the federal rule the exceptional circumstances standard is high and not often met. *See e.g., In re Folding Carton Antitrust Litigation*, 83 F.R.D. 256, 259–60 (N.D.Ill.1979) (allowing identification of experts who would not be called to testify, but not their facts known and opinions held); *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F.Supp. 1122, 1138–40 (S.D.Tex.1976) (allowing discovery of nontrial expert whose findings were relied on by testifying expert, but prohibiting discovery of "alternative claims" of nontrial experts); *Inspiration Consol. Copper Co. v. Lumbermens Mut. Cas. Co.*, 60 F.R.D. 205, 210 (S.D.N.Y.1973) (limiting discovery of accountant whose consultative work provided documents and opinions for claim being asserted); *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11, 14 (N.D.Ill.1972) ("the rule clearly contemplates a showing that a party has found opinions by others on the subject to be unavailable before [obtaining discovery of nontrial expert]. Defendants have made no attempt to show that they are without sufficient funds or information to obtain other [such] opinions . . . ."); *Kozar v. Chesapeake & Ohio Ry. Co.*, 320 F.Supp. 335, 374–75 (W.D.Mich.1970), aff'd in part and vacated in part on other grounds, 449 F.2d 1238 (6th Cir.1971) (no exceptional circumstances shown where defendant railroad had full access to experts not only from its own employees, but from the brake manufacturer and educational community as well).

Under these cases discovery of nontrial experts is usually prohibited when a party seeking discovery has available alternatives. That is the situation here. Barton is not a unique handwriting expert; the railroad could easily hire its own. Plaintiff's crossing expert is not relying on Barton's finding for his testimony; rather his conclusions seem based on a number of hypothetical facts. The trial court's granting of the motion to suppress Barton's testimony was not error.

VI. On January 22, 1982, the railroad filed a motion to compel the production of documents prepared by plaintiff's three experts: Crawford (crossing), Henderson (economic damages), and Barton (handwriting). In an order entered January 26, 1982, the trial court overruled the motion. The basis for overruling the motion, as it related to Barton, was that, as mentioned previously, Barton was not going to be called as a witness. The motion was overruled as it related to Crawford and Henderson because "there is insufficient showing of defendants' need or hardship."

The railroad argues that the trial court erred in placing the burden on the railroad to show need or hardship as a prerequisite to the discovery of the expert's trial preparation materials. Neither rule 129 (production of documents by non-experts) nor rule 122(d)(1)(B) (further discovery of experts who will be called at trial) contains a need or hardship test. Plaintiff on the other hand argues that rule 122(c) is the proper standard to apply. Under that standard, he argues, the trial court was correct in disallowing discovery of the documents.

Rule 129 allows a party to discover the contents of documents prepared or held by the party opponent. Rule 129 states its scope to be that of rule 122. As a general rule, the scope of discovery under rule 122 is broad indeed:

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(a) Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved

in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The general scope allowed under rule 122 is limited by rule 122(c) and (d). These subsections address discovery of trial preparation materials. Rule 122(c) concerns the discovery of the materials of nonexpert witnesses:

(c) *Subject to the provisions of subdivision (d) of this rule,* a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (a) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. (Emphasis added.)

The rule is framed to avoid work product objections. *See* Advisory Comm. Note, Fed. R.Civ.P. 26, 48 F.R.D. 497, 502 (1970). The rule specifically defers to subdivision (d) when experts are involved.

Rule 122(d), as we have explained, provides one method of treating cases of discovery of experts who will testify and an-

other method for those who will not. An expert who is expected to testify is subject to the two-step procedure of rule 122(d)(1):

(d) Except as provided in R.C.P. 133, discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (a) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(1)(A) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

(B) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (d)(3) of this rule, concerning fees and expenses as the court may deem appropriate.

An expert who is not expected to testify is subject to rule 122(d)(2):

A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in R.C.P. 133 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Here there are both categories of experts. Crawford (crossing liability) and Henderson (damages) are expected to be called at trial. Barton (handwriting) is not expected to be called. Accordingly the discovery of documents prepared by Crawford and Henderson falls under rule 122(d)(1), whereas the documents prepared by Barton are subject to rule 122(d)(2).

The first step provided by rule 122(d)(1) has been taken in the discovery of Crawford

and Henderson; interrogatories have been answered which gave the substance of their testimony. The second step requires a motion for further discovery by the party seeking discovery. Rulings on the motion are discretionary. The absence of standards for ruling on the motions has been lamented. Wright and Miller, *Federal Practice and Procedure* § 2031 (Supp.1981); Graham, *Discovery of Experts Under Rule 26(b)(4) of the Federal Rules of Civil Procedure: Part One, An Analytical Study,* 1976 U.Ill.L.F. 895, 930.

■ In the absence of a more helpful standard it is suggested by federal cases that the discretion should be exercised to foster trial defense but not affirmative trial preparation. That is, a movant should be allowed production of the documents if the purpose is to provide for effective cross-examination; production should not be allowed if it is sought to assist in presenting the movant's own case. *In re IBM Peripheral EDP Devices Antitrust Litigation,* 77 F.R.D. 39, 41 (N.D.Calif.1977); *Quadrini v. Sikorsky Aircraft Div. United Aircraft Corp.,* 74 F.R.D. 594, 595 (D.Conn.1977).

■ Plaintiff seeks to justify the trial court ruling disallowing production by stating it fell within the trial court's discretion. It cannot be seriously disputed that the trial court had discretion, under the circumstances here, to deny the motion. The difficulty is that the trial court, when it overruled the motion as it related to the two witnesses who would testify, seems not to have exercised discretion. On the contrary, the denial seems to have been bottomed on the failure of the railroad to show need or hardship. As mentioned, the railroad had no obligation to make such a showing. The trial court was mistaken in applying the rule 122(c) standard (substantial need/undue hardship).

■ A refusal or failure to exercise discretion will not be affirmed by demonstrating that the result reached could have been the same upon the exercise of the withheld discretion. *State v. Hildebrand,* 280 N.W.2d 393, 396 (Iowa 1979); *State v.*

*Boston,* 233 Iowa 1249, 1257, 11 N.W.2d 407, 411 (1943); Fagg, *A Judge's View of Trial Practice,* 28 Drake L.Rev. 1, 4–6 (1978–79). Because the trial court had discretion to either allow or disallow the motion for production it was required to exercise it. The duty to exercise discretion was not discharged. The trial court merely applied the need or hardship standard which it was not called upon to do.

Upon remand the trial court should reconsider the motion as it relates to the witnesses who will testify (Crawford and Henderson) and, exercising its sound discretion, allow or disallow the motion. Because there appear to be no exceptional circumstances that would warrant production of Barton's documents the motion for production as it related to Barton need not be reconsidered.

In all other respects the judgment of the various challenged rulings of the trial court are affirmed. Costs on appeal are taxed one-eighth to plaintiff and seven-eighths to the railroad.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.