Donald R. HINES, Jr., Appellee,

v.

ILLINOIS CENTRAL GULF RAILROAD, Appellant,

Damon Gene Davis, Defendant, and City of New Hartford, Iowa, Appellant.

No. 67710.

Supreme Court of Iowa.

Feb. 16, 1983.

Don W. Burington and Joel J. Yunek of Laird, Burington, Bovard, Heiny, McManigal & Walters, Mason City, for appellant, City of New Hartford, Iowa.

James D. DeKoster and Joel J. Yunek of Swisher & Cohrt, Waterloo, for appellant, Illinois Central Gulf R.R.

C.A. Frerichs, Waterloo, for appellee.

Bennett A. Webster of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for the amicus curiae Chicago & Northwestern Transp. Co.

Considered by LeGRAND, P.J., and McCORMICK, McGIVERIN, LARSON and SCHULTZ, JJ.

SCHULTZ, Justice.

This appeal involves an action for damages arising out of an auto-train collision. We must decide whether the Iowa Department of Transportation (DOT) or the fact finder in a judicial proceeding should determine whether a railroad crossing is extrahazardous. This issue depends upon the applicability of Iowa Code section 307.-26(5)(b). The pertinent language in this section provides: "[a] railroad crossing shall not be found to be particularly hazardous for any purpose unless the [DOT] has determined it to be particularly hazardous."[1] The district court interpreted this language to place on the DOT the exclusive and binding determination of the crossing's status, thereby excluding a judicial determination of the matter, but it then eliminated that duty by holding that this portion of the section was unconstitutional. We hold that this section does not provide an exclusive

---

1. The terms particularly hazardous and extrahazardous as used in this opinion have the same meaning.

and binding means of determining whether the crossing is extra-hazardous in tort actions arising from crossing accidents. Although we disagree with the district court's determination that the statute is applicable in such actions, we reach the same result and affirm.

There are no factual disputes; this appeal concerns questions of law. Plaintiff, Donald R. Hines, Jr., was a passenger in an automobile that collided with a train owned by Illinois Central Gulf Railroad (railroad) at a crossing located in or near the city limits of New Hartford (city). The crossing was protected only by the standard crossbuck sign, and no city ordinance required any additional protective devices.

Plaintiff filed this action against his driver, the city, and the railroad. In his counts against the city and the railroad he alleged that the crossing was unsafe.

Plaintiff filed a motion to adjudicate law points and an amended motion in which he made it clear that at trial he would assert that the crossing involved was extrahazardous and that the railroad had a duty to install protective devices in addition to the crossbuck. Defendants argued in their resistance and amended resistance that section 307.26(5)(b) vests in the DOT the exclusive authority to determine which crossings are particularly hazardous, and since the DOT had not done so, the crossing in question is not particularly hazardous and the railroad has no duty to install any additional protective devices. Thus, they argued, the question whether the crossing was particularly hazardous was not to be determined by a jury.

We granted interlocutory appeal from the district court ruling on the motion to adjudicate law points. This ruling held that the previously quoted portion of section 307.26(5)(b) was void as it violated Iowa Constitution article III, section 1, by delegating both legislative and judicial power to an executive agency. This ruling also concluded that this portion of the section violated Iowa Constitution article III, section 29, in that the subject of this portion of the section was not expressed in the title

of the act. As previously indicated, we do not reach the merits of these constitutional claims. We consider constitutional issues on appeal only when another question is not decisive. *Ehlinger v. Mardorf,* 285 N.W.2d 27, 28 (Iowa 1979).

Initially, we deem it helpful to examine statutory and case law that has governed railroad crossing litigation for nearly a century. Pursuant to the statute the railroad is required to erect a warning sign at every railroad crossing, Iowa Code § 327G.2 (1981), and to sound a horn and ring a bell when reaching the crossing. Iowa Code § 327G.13 (1981). Additional common law duties of care have been required of railroads at extra-hazardous crossings. *Glanville v. Chicago, Rock Island & Pacific Railway Co.,* 190 Iowa 174, 179–82, 180 N.W. 152, 155 (1920), relying on *Grand Trunk Railroad Co. v. Ives,* 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485 (1892) and *Annaker v. Chicago, Rock Island & Pacific Railway Co.,* 81 Iowa 267, 47 N.W. 68 (1890). In *Maier v. Illinois Central Railroad Co.,* 234 N.W.2d 388 (Iowa 1975), we reviewed the previously quoted statutes and then restated the evaluation of our common law as follows:

> Case law on a railroad's duty to give warnings in addition to minimum statutory requirements has become well settled. It was summarized in *Wickman v. Illinois Central Railroad Co.,* 253 Iowa 912, 917, 114 N.W.2d 627, 629–30 (1962) as follows:
>
> > ... [A] railroad company is not required to install a signaling device or station a flagman at every railway crossing.... [S]tatutory requirements for warnings at railway crossing as the crossbucks, ringing the bell and blowing the whistle, are minimum only; ... conditions may exist which require more.
>
> A third principle, elementary of course, is that in this class of cases our duty is not to decide whether the crossing in question was in fact extraordinarily hazardous so that some warning beyond the statutory requirements was called for, but only to say whether there was substantial evidence from which a jury might so find.

The general rule also is that whether the condition of a crossing, with its surroundings, is such as to call for additional warning devices, or flagmen, is a question for the jury unless reasonable minds could reach only one conclusion from the evidence. (Authorities omitted).

*Id.* at 391. In 1976 we reaffirmed and applied these principles in *Kuper v. Chicago & Northwestern Transportation Co.*, 290 N.W.2d 903, 905 (Iowa 1980).

There is no dispute that the railroad remains subject to the minimum statutory requirements. It contends, however, that legislative amendment to section 307.26(5) in 1977 altered the common law approach by taking away from the trial fact finder and giving to the DOT the duty to determine whether a crossing is extra-hazardous. Prior to 1977, that section stated:

307.26 Railroad transportation division. The administrator of the railroad transportation division shall have the following duties and responsibilities:

. . . .

5. Advise and assist the director in the conduct of research on railroad-highway grade crossings and encourage and develop a safety program in order to reduce injuries or fatalities.

The 1977 amendment to section 307.26(5) added subsections (a) and (b), 1977 Iowa Acts ch. 103 § 2, so that it now reads:

5. Advise and assist the director in the conduct of research on railroad-highway grade crossings and encourage and develop a safety program in order to reduce injuries or fatalities including, but not limited to, the following:

a. The implementation of a program of constructing rumble strips at grade crossings on selected hard surface roads.

b. The establishment of standards for warning devices for particularly hazardous crossings or for classes of crossings on highways, which standards are designed to reduce injuries, fatalities and property damage. Such standards shall regulate the use of warning devices and signs which shall be in addition to the requirements of section 327G.2. Implementation of such standards shall be the responsibility of the government agency or department or political subdivision having jurisdiction and control of the highway and such implementation shall be deemed adequate for the purposes of railroad grade crossing protection. The department, or the political subdivision having jurisdiction, may direct the installation of temporary protection while awaiting installation of permanent protection. A *railroad crossing shall not be found to be particularly hazardous for any purpose unless the department has determined it to be particularly hazardous.*

(Emphasis added). We were first called upon to interpret the amended statute in *Sullivan v. Chicago & Northwestern Transportation Co.*, 326 N.W.2d 320 (Iowa 1982), although we had previously noted in *Kuper* that the amended rule had been adopted too recently to affect our holding in that case. *Kuper*, 290 N.W.2d at 906.

In *Sullivan* we scrutinized subsections (a) and (b) of section 307.26(5). We stated:

The subsections are stated as examples only of the sort of advice and assistance the administrator of the railroad division is expected to provide to the DOT director. It is apparent that other administrative programs aimed at the reduction of injuries or fatalities were also contemplated.

The railroad points to the broad language in the last sentence of the amended provision: "A railroad crossing shall not be found to be particularly hazardous *for any purpose* unless the department has determined it to be particularly hazardous." (Emphasis added.) The railroad maintains that the legislature wrote "sweeping changes into the railroad grade crossing law" by taking the extra-hazardous crossing determination from juries and placing it in the hands of the administrative agency. It argues the change was warranted by "modern day safety needs" of rail and motor traffic, as well as the "complex engineering considerations present at every railroad crossing." It is argued that the legislature

was dissatisfied with our past application of the common law rules which, it is said, resulted in virtually all hazardous crossing cases being submitted for determination by a jury.

It seems curious that, if the legislature really intended the crucial and sweeping changes the railroad suggests, it would do so in the manner and at the place suggested. The rules governing negligence claims arising from railroad crossing accidents were long and painstaking in development. The cases, and the rules derived from them, date from early statehood. The change perceived by the railroad would shift responsibility, and presumably tort liability, from railroads to the public. And it is said that this is done by a sentence added to the second of two mere examples of advice—in an incomplete listing—that an agency division is required to give its director.

*Sullivan*, 326 N.W.2d at 323. We subsequently determined that the interpretation of the statute was not necessary; however, an interpretation is needed in this case.

As in *Sullivan* the defendant railroad argues that the last sentence in the amended provision has completely altered the well-established common law rule that extra-hazardous crossing determinations should be made by the fact finder. The railroad contends that the language of the sentence is so clear, certain, and free from ambiguity that its meaning is evident from a mere reading and leaves no room for statutory construction. *See Consolidated Freightways Corp. v. Nicholas,* 258 Iowa 115, 120, 137 N.W.2d 900, 904–05 (1965). It then argues that if we apply the rules of statutory construction we reach the same result that was reached by the trial court. We find no such certainty in the key phrase "for any purpose."

When separated from the rest of the section that phrase apparently indicates that the DOT has an unlimited power of determination that would apply in all situations. When examined within the context of the entire section, however, which has as a stated purpose the research and develop-ment of a safety program and which allocates in detail the implementation and responsibility for these programs among the various agencies and government subdivisions, we are not persuaded that this section was also intended to determine civil liability. The argument that the phrase causes a profound and major change of long-standing rules concerning the determination of liability in crossing accident cases raises the question whether the legislature had such intent or whether it was merely providing the DOT with final authority over determinations of hazardousness by other agencies, departments, or political subdivisions. Obviously, we should not search unduly for uncertainty when we examine a statute; however, we find the principles we stated in *Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530 (Iowa 1981), especially applicable here:

> In our role of determining the meaning of statutes, the ultimate goal is to ascertain, and if possible, give effect to the intention of the legislature. In this endeavor we are aided by principles of statutory construction. We examine the language used in the statute and the purpose for which it was enacted. All parts of the statute are considered together, without giving undue importance to a single or isolated part. We then give a sensible and logical construction to the legislation; we avoid interpretations that produce strained, impractical, or absurd results. The manifest intent of the legislature prevails over the literal import of the words used.

*Id.* at 532–33 (citations omitted). Our examination of the entire section causes us to find that the last sentence of section 307.-26(5)(b) is susceptible to more than one reasonable interpretation and is, therefore, open to construction. *Nicholas,* 258 Iowa at 120, 137 N.W.2d at 904–05. We now further examine the statute and appropriate rules of construction.

The railroad claims that a proper construction of the statute indicates that the legislature intended to change the common law. It argues that the legislature must be

assumed to know the common law rule and that the final sentence could have no purpose other than to change this rule; to interpret it otherwise would be to render it superfluous. *Iowa Department of Transportation v. Nebraska-Iowa Supply Co.*, 272 N.W.2d 6, 11 (Iowa 1978). Finally, the railroad contends that the legislature intended to place centralized control in the DOT rather than in individual railroads, juries, and governments for the purpose of providing a before-the-fact rather than an after-the-fact determination of hazard. It contends that it is logical that the legislature intended to relieve it from liability for failure to erect signs except where such signs have been mandated by section 327G.2 or by the DOT pursuant to section 307.26(5)(b).

■ We agree with the railroad that the legislature was familiar with the existing state of the law; however, we also assume that if the legislature sought to remedy a specific evil it would have clearly so indicated. *Peffers v. City of Des Moines*, 299 N.W.2d 675, 678 (Iowa 1980). The railroad claims the evil was the common law procedure of after-the-fact determination of hazardousness, and the cure was a before-the-fact determination by the DOT. If the intent of the legislature was to change this procedure, this intent should have been clearly indicated.

■ Another applicable rule of construction requires a showing of intention to remedy an existing status by a clear expression or implication: "[A] statute will not be presumed to overturn long-established legal principles, unless that intention is clearly expressed or the implication to that effect is inescapable." *Wilson v. Iowa City*, 165 N.W.2d 813, 822 (Iowa 1969). The statute will be construed so as not to overturn long-established principles of law "unless an intention to do so plainly appears by express declaration or necessary or unmistakable implication, and the language employed meets of no other reasonable construction." *Id.* (quoting 50 Am.Jur. *Statutes* § 340 (1944)).

■ This section provides no clear language or implication that the intention of the legislature was to either remedy the after-the-fact determination of hazardousness in a tort action or change the long-existing common law principles concerning the determination of such hazardousness. Not one word indicates this section involves or affects civil litigation.

The determination that the disputed phrase was not intended to apply to litigation arising from automobile-train collisions does not make this phrase superfluous. The "any purpose" language places a restriction on other governmental units, which are required by the statute to implement standards for warning devices, from deciding where to place the devices. It does this restricting by placing this exclusive duty on the DOT. The language has purpose, even though it is restricted to purposes found within the statute.

■ Consequently, we reject the railroad's contentions that unless we find that the legislature intended to change the common law we will make the controverted phrase superfluous. We also find no merit in the railroad's contention that the legislature intended to assign to the DOT exclusive authority to determine whether a crossing is extra-hazardous. Its arguments in support of its contention focus on the wisdom of the legislation and not on the legislature's intent. In construing statutes it is our duty to determine legislative intent; the wisdom of the legislation is not our concern.

We have concluded that the legislature did not intend section 307.26(5)(b) to be interpreted as urged by the railroad. The stated purpose of this section and the placement of the controversial language strengthens our conclusion.

■ The DOT is provided with general duties of planning, development, regulation, and improvement of transportation. Iowa Code § 307.2 (1981). The railroad transportation division is a separate division of the DOT with the duties of its administrator prescribed in section 307.26. Subsection 5

of this section provides that the administrator shall research grade crossings and develop a safety program. As part of the safety program the administrator is to establish "standards for warning devices for particularly hazardous crossings...." The section implements these standards by providing that it is for the DOT to determine which crossings are hazardous. The section intends that this determination be made not for the purpose of assessing liability in a tort action; instead it is for the purpose of determining what additional safety devices must be implemented at crossings. We conclude that the general and special purposes of this section evince a general plan of safety rather than a determination of liability.

The legislative history of this section further supports our conclusion and raises a question of the constitutionality of the last sentence of section 307.26(5)(b). *See Lever Brothers Co. v. Erbe,* 249 Iowa 454, 463, 87 N.W.2d 469, 475 (1958) (may use legislative journals to determine legislative history in aid of statutory interpretation).

We shall focus on the 1977 amendments to section 307.26(5), which were introduced in the Senate as part of a general transportation and motor vehicle bill (S.F. 167). The House then amended the bill by adding most of the language now contained in sections 307.26(5)(a) and (b). The Senate then amended the House version as follows:

Amend the House amendment, S–3611 to Senate File 167 as follows:

1. Page 1, by striking lines 31 through 34 and inserting in lieu thereof the words *"installation of permanent protection. A railroad crossing shall not be found to be particularly hazardous for any purpose unless the department has determined it to be particularly hazardous."*

It was this version that was enacted into law, and it is this final amendment, which is now the final sentence of section 307.-26(5)(b), that is the focus of our examination.

The trial court interpreted the section to apply to crossing accident cases, but it also found the section void and in violation of Iowa Constitution article III, section 29, because "[t]he title of the statute and most of the terms thereof relate to licensing and registration of motor vehicles and drivers and nowhere is there even a hint at the subject matter involved in the portion of the statute now cited as Section 307.26(5)(b) of the Iowa Code," even though the title is 37 lines long.

Since we have already concluded that section 307.26(5)(b) does not change the common law method of determining liability, we do not reach the constitutional question. That question is relevant, however, because the court has the power and duty to construe the statutes of the state in such a way as to preserve them and render them consistent with the state and federal constitutions, if possible. *State v. Monroe,* 236 N.W.2d 24, 35 (Iowa 1975). In the instant case, the railroad urges an interpretation of section 307.26(5)(b) which would radically change the determination of civil liability, even though that provision is contained in a section devoted to the DOT's safety program. Moreover, there is no mention of the substantial change of railroad tort law in the title of the act. This absence is particularly troublesome as the act's title purports to be comprehensive and specific and anyone reading the title of the act could reasonably assume that he would be apprised of all of its material provisions. If section 307.26(5)(b) was intended to make substantial change in railroad crossing law, it is doubtful that it would fail to mention such a change in the title of the act. Anyone reading the title could reasonably assume that no such change was contained therein. The requirement of Iowa Constitution article III, section 29, is intended to avoid that kind of problem. *See State v. Nickelson,* 169 N.W.2d 832, 836 (Iowa 1969).

We do not make this comparison because we intend to find the section unconstitutional. We do find, however, that the constitutional principle does give additional support to our conclusion that the legislature did not intend in enacting section 307.-26(5)(b) to abandon the common law method of determining whether a railroad cross-

ing is extra-hazardous. Since no mention of the change is contained in the act, the legislature must not have intended to make such a drastic change, and section 307.-26(5)(b) is to be construed in the manner suggested by the plaintiff. Thus, we construe the statute to forward the establishment of standards for upgrading the safety devices at crossings, and in subsections 5(a) and (b) to provide examples of the services the administrator of the railroad transportation division is to render for the director of Iowa DOT. The controverted sentence means that the DOT, rather than another agency or jurisdiction, shall have the last word on whether a crossing meets the standards for the placement of additional warning devices.

Because our decision here means that the classification of the particular railroad crossing involved in this case is a question for the jury to decide, we find no need to decide constitutional questions. Accordingly, we affirm.

AFFIRMED.