## IN THE COURT OF APPEALS OF IOWA

No. 14-2135
Filed November 25, 2015

**KEVIN RYAN JOHNSTON,**
Petitioner-Appellee,

**vs.**

**KATELYN ELIZABETH PEREZ
VAN DAM, f/k/a KATELYN
ELIZABETH EVANS,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Dustria Relph, Judge.

Katelyn Perez Van Dam appeals an attorney fee sanction, the denial of her petition for modification of a decree of dissolution, and the calculation of child support. **AFFIRMED.**

Christina I. Thompson of Phil Watson, P.C., Des Moines, for appellant.

Jeremy M. Evans of Sporer & Flanagan, P.L.L.C., Des Moines, for appellee.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Katelyn Perez Van Dam appeals an attorney fee sanction, the denial of her petition for modification of a decree of dissolution, and the calculation of child support. She requests appellate attorney fees. We affirm.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Katelyn Perez Van Dam and Kevin Johnston have one child, A.R.J, who was born in 2009. The parties were never married. In September 2011, the parties agreed to, and the court approved, joint legal custody and physical care of the child.

Katelyn filed a petition for modification on July 1, 2014, claiming a substantial change in circumstances. She requested the court modify the custody decree and grant her physical care of the child, with reasonable visitation to Kevin. On August 11, Katelyn requested a hearing on temporary matters as the parties were disputing where the child should attend kindergarten. Kevin responded by filing an application to show cause requesting Katelyn be found in contempt for enrolling the child in a school district not listed in the decree.

On August 26 a hearing was held on the two motions. The court dismissed the application for rule to show cause at Kevin's cost. The court declined to rule on Katelyn's petition for modification and directed the parties to obtain a trial date, which was later set for November 10. Kevin then filed a motion to enforce the custody decree. On October 2, a hearing was held on the motion. The district court denied the motion finding the issue presented was previously ruled upon.

Before the trial on Katelyn's petition, both parties filed multiple motions. Katelyn filed a combined motion in limine, objection to petitioner's witnesses and exhibits, and motion for sanctions. Katelyn requested sanctions for Kevin's failure to produce responses to her discovery requests, his failure to timely provide a witness and exhibit list, and copies of his proposed exhibits. On November 9, Kevin filed a motion to dismiss Katelyn's petition for modification and enter a declaratory order stating that the child should attend one of the school districts listed in the decree. He also filed a motion in limine to exclude "any and all evidence not previously presented to a parenting coordinator," citing a paragraph of the decree allowing the appointment of a parenting coordinator to settle the parties' disputes.

A trial on all issues was held on November 10. The court found Katelyn failed to show a substantial change in circumstances to modify the decree. With the parties' agreement, and in the child's best interests, the court modified the parenting schedule. The court found the West Des Moines school district to be the most suitable for the child, set Kevin's child support at $113.06 per month, and reaffirmed the other provisions of the original decree. Concerning the pre-trial motions, the court denied Katelyn's motion in limine, but granted her motion for sanctions. The court found:

> it appropriate to sanction [Kevin] for his well-documented failure to respond to [Katelyn's] discovery requests and abide by trial scheduling orders. [Kevin's] delays have caused [Katelyn] to incur significant additional attorney fees. Accordingly, and pursuant to Iowa Rule of Civil Procedure 1.602(5), [Kevin] is sanctioned in the amount of $ 1,000.00, which shall be payable to [Katelyn's] attorney within 90 days of entry of this order.

The court denied Kevin's motion to dismiss and motion in limine.

Katelyn appeals.

## II.   STANDARD OF REVIEW

We review a district court's decision on whether to impose sanctions for an abuse of discretion. *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009). "We find such an abuse when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Schettler v. Iowa Dist. Ct.*, 509 N.W.2d 459, 464–65 (Iowa 1993). "'Unreasonable' in this context means not based on substantial evidence." *Id.*

This modification action was tried in equity, and our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006). However, we give weight to the trial court's findings because it was present to listen to and observe the parties and witnesses. *In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986); *see also* Iowa R. App. P. 6.904(3)(g).

## III.   DISCUSSION

### A.   Motion for Sanctions

Katelyn claims the court's sanction of $1000 was insufficient and an abuse of discretion. She also claims the court acted improperly by allowing Kevin to offer exhibits and witnesses when he failed to comply with the trial scheduling order.

To ensure our district courts have the tools to effectively manage pretrial and trial conduct, we have recognized the inherent power of the district court to impose sanctions. *Fry v. Blauvelt*, 818 N.W.2d 123, 130 (Iowa 2012); *see also*

Iowa R. Civ. P. 1.602(5) (stating if a party fails to obey a scheduling or pretrial order, the court "may make such orders with regard thereto as are just"). Although district courts have discretion in deciding whether to enforce pretrial orders, "it is incumbent upon a reviewing court to scrutinize the exercise of that discretion and to confine the exercise to reasonable limits." *Fox v. Stanley J. How & Assocs., Inc.*, 309 N.W.2d 520, 522 (Iowa Ct. App. 1981).

Katelyn claims the district court's decision to sanction Kevin $1000 violated the language of Iowa Rule of Civil Procedure 1.602(5), which states a court "shall require the party or the attorney representing that party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the court finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." Katelyn notes, due to Kevin's eleventh hour production of documents, her attorney had to enlist the help of an additional attorney at a total cost of $1912.00. Additionally, she complains her attorney incurred $4625 in costs preparing the weekend before trial.

A trial scheduling order was entered on September 25, 2014, which set trial for November 10. The order required the parties to designate expert witnesses and complete discovery thirty days prior to trial, file and exchange witness and exhibit lists ten days prior to trial, and file and exchange current financial statements and stipulation of assets and liabilities ten days prior to trial. The document included a warning that a violation of the order may result in sanctions, including dismissal or a grant of relief at the request by the opposing

party. Kevin filed his witness and exhibit list on November 5; he filed an amended version on November 7 (Friday afternoon before trial). The morning of November 7, Katelyn filed her combined motion in limine, objection to Kevin's witnesses and exhibits, and motion for sanctions. Katelyn requested the court impose sanctions by disallowing many of Kevin's exhibits and witnesses. Katelyn did not request a continuance because "a continuance would essentially reward the Petitioner for his actions," and prolong their child's chaotic education schedule.

We find the district court's decision to sanction Kevin (and only Kevin) for $1000 was reasonable and tenable. The district court reasoned: "The court finds it appropriate to sanction [Kevin] for his well-documented failure to respond to [Katelyn's] discovery requests and abide by trial scheduling orders. [Kevin's] delays have caused [Katelyn] to incur significant additional attorney fees." Given the considerable amount of discretion granted to the district court to sanction a party, and the considerable discretion we give the district court on appeal, we affirm the sanction.

We find the district court did not abuse its discretion by allowing Kevin to offer his witnesses and exhibits. The purpose behind the disclosure requirements of the witness and exhibit lists is to assist the parties and the court in having an orderly trial free of surprises that can cause delay or even derailment. *See Fry*, 818 N.W.2d at 129–30. Pre-trial conferences and orders "contemplate trial, and are designed, not to prevent the presentation of a controversy to the court, but to expedite and simplify that presentation." Iowa R.

Civ. P. 1.602(5) cmt. For this reason, "[e]xclusion of evidence is the most severe sanction available under the rule, and is justified only when prejudice would result. Exclusion should not be imposed lightly; other sanctions are available such as continuation of the trial or limitation of testimony." *Klein v. Chicago Cent. & Pacific R. Co.*, 596 N.W.2d 58, 61 (Iowa 1999). The most appropriate sanction, in this instance, would have been to continue the trial. As this was not requested, the "severe sanction" of excluding evidence was not warranted. The court allowed both parties to make statements concerning the untimely filings in the case. The court found there was nothing offered by Kevin "that should be a surprise to" Katelyn. We defer to the district court's finding and decline Katelyn's request to disregard the exhibits offered by Kevin.

**B.    Modification**

Katelyn claims she demonstrated a "substantial change in circumstances" not within the contemplation of the district court when it entered the decree, and she is the parent best suited to care for the child.

The objective of physical care "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Changing physical care of children is one of the most significant modifications that can be undertaken. *In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). The parent seeking to modify the physical care provision of a dissolution decree must prove "there has been a substantial change in circumstances since the time of the decree not contemplated by the court when

the decree was entered, which is more or less permanent and relates to the welfare of the child." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). In addition, the parent seeking to modify physical care has a "heavy burden" and "must show the ability to offer superior care." *Id.*; *see also In re Marriage of Spears*, 529 N.W.2d 299, 301 (Iowa Ct. App. 1994) (stating "once custody of the children has been fixed, it should be disturbed only for the most cogent reasons"). The controlling consideration is the child's best interest. *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).

Katelyn contends the evidence supporting her modification claim includes: the fact she has served as the "de facto" primary care giver to the child, the parties' inability to communicate, and the negative effect the frequent transitions between the parents has on the child.

Upon our de novo review of the record, we conclude Katelyn failed to prove a substantial change in circumstances. While it is clear that some changes have occurred, those changes were contemplated at the time the decree was entered, or are insufficient to merit modifying the decree. The district court's order provides a good analysis of the situation:

> A.J. has been attending two different kindergartens since school began this year, Madrid on Katelyn's days and Western Hills on Kevin's days. Kevin, Katelyn, and their current spouses all agreed that attending two different schools has been detrimental to A.J. Although she is apparently doing well academically at both schools so far, they testified that the frequent changes are causing A.J. confusion, anxiety, and frequent need for reassurance and explanation about her schedule. While the fact that A.J. began kindergarten could be considered a "change in the educational needs of the minor child," it was obviously anticipated that she would begin school at some point when the decree was entered. The court agrees that one school needs to be determined for A.J.,

but does not find that fact that she has reached the age to start school enough to warrant a change in custody.

Katelyn's claim that Kevin has had a change in his mental or emotional health to the point that it would warrant a change in custody simply is not supported by the evidence. She portrayed him as controlling, but text messages admitted into evidence show that they were able to communicate civilly and work out most issues concerning A.J. Katelyn claimed she felt bullied by Kevin, but she never sought the assistance of a parenting coordinator to help her resolve any issues. She presented evidence consisting of Facebook photos to support her claim that Kevin has a drinking problem. Kevin testified that the events depicted in the photos were his bachelor party, a New Year's Eve party, a wedding party, and his birthday party. He has never been arrested for any drug or alcohol related issues, nor was evidence presented that it has been suggested that he undergo substance abuse or mental health treatment. There was no meaningful evidence presented to indicate that Kevin has any concerning mental, emotional, or substance related issues.

Kevin and Katelyn are both very involved parents. They both take her to doctor's appointments and dental appointments. They both participate in her school activities. Both families are involved in church and other extracurricular activities with A.J. They both arrange their own child care for A.J. (the court notes that the original decree provides that each parent may select their own daycare provider). A.J. is very fortunate to have two loving and involved parents and extended families who are obviously concerned about her long-term well-being.

The court is unable to find that Katelyn is more able to minister to A.J.'s well-being than Kevin is. If anything, the court has some concern for Katelyn's apparent lack of insight into A.J.'s need for stability in her early years. Besides frequent residential moves, Katelyn has changed A.J.'s childcare providers at least nine different times with six different providers in the last three years. When asked if the frequent changes were negatively impacting her daughter, Katelyn didn't think so, since A.J. is with different people every day. She testified that she thinks A.J. has stability because she has a roof over her head. And while she said she believes daycare providers are important people in a child's development, she also believes that frequent changes are "not a big deal" for a child.

We affirm the district court's denial of Katelyn's modification petition.

**C.     Child Support**

Katelyn claims the district court failed to consider Kevin's overtime hours in determining his child support obligation.  The district court noted: "Kevin's annual salary is $41,787.20.  Any income over that is due to overtime.  Kevin's pay stubs . . . show that Kevin does not regularly and routinely work overtime."

Overtime wages are not excluded as income.  *In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992).  Overtime wages are within the definition of gross income to be used in calculating net monthly income for child support purposes.  *Id.*  This conclusion does not necessarily mean, however, that a court must steadfastly adhere to the appropriate child support amount as determined by the guidelines using overtime pay if the amount results in injustice between the parties.  *Id.*  In circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, a deviation from the child support guidelines may be appropriate.  *Id.*; *see also In re Marriage of Close*, 478 N.W.2d 852, 854 (Iowa Ct. App. 1991).  Yet a parent's child support obligation should not be so burdensome that the parent is required to work overtime to satisfy it.  *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333 (Iowa Ct. App. 2005).  However, the district court must make a specific finding to that effect.  *Id.*

Upon our de novo review of the record, we agree with the district court Kevin's overtime wages are "uncertain or speculative," and it would it would be unjust to include the overtime wages in the calculation of Kevin's child support obligation.  We affirm.

## D.    Appellate Attorney Fees

Katelyn requests an award of appellate attorney fees.   An award of appellate attorney fees is not a matter of right but rests within our discretion.   *In re Marriage of Scheppele*, 524 N.W.2d 678, 680 (Iowa Ct. App. 1994).   In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal.   *Id.*   Given the circumstances in this action, we decline to award Katelyn appellate attorney fees.

## IV.    CONCLUSION

We find the district court did not abuse its discretion by sanctioning Kevin $1000.   Further, Katelyn has failed to carry her heavy burden in demonstrating a substantial change in circumstances to merit modifying the original decree.   The district court properly excluded Kevin's overtime wages in calculating his child support obligation.   Finally, we decline Katelyn's request for appellate attorney fees.

**AFFIRMED.**