**FOREMAN & CLARK OF IOWA, INC.; Mabel Groeltz, Henry Haegg and Gordon Strayer, as Co-trustees under the Will of Fred A. Groeltz; and Case Investments, a Partnership, Appellees,**

v.

**BOARD OF REVIEW OF the CITY OF CEDAR RAPIDS, Iowa; Leo C. Peiffer, Chairman of the Board of Review of the City of Cedar Rapids, Iowa; Thomas Hoegen, James W. Bowker, L. P. Boudreaux, and Abbott Lipsky, Members of the Board of Review of the City of Cedar Rapids, Iowa, Appellants.**

No. 62791.

Supreme Court of Iowa.

Dec. 19, 1979.

David F. McGuire, City Atty., and Lynda E. Thomsen, Asst. City Atty., Cedar Rapids, for appellants.

Scott E. McLeod of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellees.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, HARRIS, and McGIVERIN, JJ.

McGIVERIN, Justice.

This appeal involves the 1977 assessed valuation for taxation purposes of the Foreman and Clark building in downtown Cedar Rapids. The assessor set the building and land valuation at $191,246. Plaintiff owners and tenant (taxpayers) protested to the board of review. After a hearing the board overruled the protest. Upon taxpayers' appeal in equity to the district court, the court reduced the assessment to $150,000. The board appeals to us. We affirm.

The following questions are presented for our review:

1. Was the installment sale contract of the subject property competent evidence of market value as of the date of the assessment?

2. If the contract sale price was used as evidence of market value, was that contract price adjusted to take into account the effect of the existing lease on the property?

3. Did taxpayers meet their burden of proving the assessor's valuation was excessive?

4. Was the trial court's valuation of $150,000 supported by substantial evidence?

The realty is a tract 60 × 140 feet containing a two-story building, erected about 85 years ago in the downtown area of Cedar Rapids. The first floor was remodeled by Foreman & Clark in 1972 and is used as a men's clothing store. The basement is suitable only for storage. The second floor has been neglected and also is usable only for storage. The roof is in need of repair and probably replacement due to several obvious leaks.

Plaintiff Foreman & Clark of Iowa, Inc., is the tenant and the other plaintiffs are the contract vendor and contract purchaser of the property. Plaintiffs Mabel Groeltz, Henry Haegg, and Gordon Strayer are co-trustees under the will of Fred A. Groeltz and the vendors. Plaintiff Case Investments, a partnership, is the purchaser.

On June 28, 1977, vendors sold the property to purchaser on contract for $150,000 with $30,000 down payment, the balance payable in $1000 monthly installments including interest on the unpaid balance at eight percent per annum, with any unpaid principal balance payable in full on July 1, 1992. The purchase was subject to an existing lease, which required the tenant to

pay all annual real estate taxes in excess of $3,869. The contract recognized the roof on the building, being in need of extensive repair or replacement, was the obligation of the landlord under the lease.

When Foreman & Clark improved the premises in 1972, it entered into a lease with the Groeltz trustees calling for rent of $15,000 per year until 1980 and $20,000 annually until 1985. Case Investments succeeded to the lessors' rights and obligations under the June 28, 1977, purchase contract.

The real estate was assessed at $191,246 for taxation as of January 1, 1977.

From that assessment taxpayers filed a protest with the Board of Review of the City of Cedar Rapids under section 441.37, The Code 1977. The board denied the protest and upheld the assessment.

Plaintiffs then filed a petition in equity in district court under section 441.38, appealing the board's action. The court held an evidentiary trial pursuant to sections 441.38–.39 and filed a decision fixing the assessed valuation at $150,000.

The board appealed to us, contending the assessor's and board's valuation should have been upheld by the court.

"General principles controlling review of the board's decision are well established. . . . No presumption exists that the assessor's valuation is correct. The appeal in district court is heard in equity, and the issues before the board are triable anew. § 441.39. Review of the district court decree is de novo. *White v. Board of Review*, 244 N.W.2d 765, 769 (Iowa 1976)." *Equitable Life Insurance Company v. Board of Review of the City of Des Moines*, 281 N.W.2d 821, 823 (Iowa 1979); *see also Farmers Grain Dealers Association v. Sather*, 267 N.W.2d 58 (Iowa 1978); Iowa R.App.P. 4.

■ Taxpayers did not offer the evidence of at least two disinterested witnesses that the market value of the property was less than the value determined by the assessor. Therefore, the burden of proof is on taxpayers to show the assessed valuation is excessive. § 441.21(1).

■ In equity cases, especially when considering credibility of witnesses, we give weight to the trial court findings, but are not bound by them. Iowa R.App.P. 14(f)(7); *City of Atlantic v. County Board of Review of Cass County*, 234 N.W.2d 880, 882 (Iowa 1975).

The valuation is governed by section 441.-21, The Code 1977. As we said in *Equitable Life*, 281 N.W.2d at 823:

Under that statute property is to be assessed at its actual value, which means "market value," the exchange value between voluntary, informed buyers and sellers.

Two approaches for ascertaining market value are provided in the statute, the "sales prices" approach and the "other factors" approach. The sales prices approach depends upon the availability of sales prices of the property or comparable property in normal transactions. When market value cannot be readily established in that manner, the other factors approach is to be used. *See Maytag Company v. Partridge*, 210 N.W.2d 584, 587 (Iowa 1973); § 441.21(1) ("In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may consider its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.").

The assessor's valuation was based on the "other factors" approach, because at the time of assessment the assessor knew of no readily ascertainable market value for the property under the sales prices approach.

We now turn to the issues presented.

*I. Was the contract sale price competent evidence of market value as of the date of the assessment?* The board first contends evidence of the June 28, 1977, contract sale price was inadmissible due to lack of proper

foundation. The board says in its brief that "unless a taxpayer can show that market value can be readily established at the time of the assessment, [on January 1, 1977,] evidence of the later contract sale price is not competent evidence of market value sufficient to require the assessor to use market value based on sales prices in determining value for tax purposes."

As to this argument we must consider section 441.21(1), second paragraph, which states:

The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property. *"Market value" is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property.* Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value. In arriving at market value, sale prices of property in abnormal transactions not reflecting market value shall not be taken into account, or shall be adjusted to eliminate the effect of factors which distort market value, including but not limited to sales to immediate family of the seller, foreclosure or other forced sales, contract sales, discounted purchase transactions or purchase of adjoining land or other land to be operated as a unit.

(Emphasis added).

▇ The exchange between vendors and Case Investment occurred in 1977, the year of the assessment. It is probable that most relevant property sales will not occur on the assessment date. The statute makes relevant a fair and reasonable exchange in the year of the assessment. Sale price of the subject property or comparable property in normal transactions reflecting market value and sale price of property in abnormal

transactions adjusted to reflect market value may be considered. *Juhl v. Greene County Board of Review,* 188 N.W.2d 351, 352–53 (Iowa 1971). Even one of the comparable sales relied on by the board's valuation witness, Donald Wehr, to support the assessor's valuation occurred in October 1977.

▇ The contract sale price on the Foreman & Clark realty was admissible to show market value in the year of the assessment as it would bear on actual value on the date of the assessment.

Because taxpayers did not offer two disinterested witnesses at the district court trial, taxpayers' evidence only bore on whether the assessed valuation was excessive. Such evidence did not shift the burden of proof to the board to show the property had no readily ascertainable market value defined according to the willing buyer and willing seller standard as the board seems to fear. 441.21(1); *Juhl,* 188 N.W.2d at 353.

There is no merit to the board's first contention.

▇ *II. Was the contract sale price properly adjusted to reflect existing lease terms?* Section 441.21(1), second paragraph, states: "In arriving at market value, sale prices of property in abnormal transactions not reflecting market value shall not be taken into account, or shall be adjusted to eliminate the effect of factors which distort market value, including but not limited to . . . contract sales . . . .."

The trial court found that:

The contract sale was a normal transaction at arm's length with unrelated parties and that an adjustment for a contract sale should be made for the amount of the down payment, the interest rate, the credit and stability of the purchasers, the maturity date, the collateral or the property itself, and in this specific case an adjustment for the condition of the roof.

Under this record, we believe the contract sale price should have been taken into account, and as an abnormal transaction

under § 441.21(1), adjusted to reflect the market value of the property.

Evidence of the parties showed the lease rental was below that of economic rent, or a fair market rental rate. No doubt this was due to approximately $72,000 of improvements made on the building by Foreman & Clark in 1972, which allowed them to negotiate a lower rental. Evidence as to economic rent for the premises ranged from a low of $20,000 per year, as testified to by a witness for plaintiffs, to $30,000 and $30,900, as stated by two board witnesses. In taking an income approach from economic rents of $20,000 and $30,000 and after applying capitalization and discount factors the evidence showed valuations of $110,000 and $175,000, respectively, by these witnesses.

Plaintiffs produced one disinterested witness who testified the fair market value of the premises, after considering the contract sale price, a discount factor and the existing lease, was $140,000.

We agree with the board that the effect of the lease must be considered as a factor in considering adjustments to the contract sale price.

In our de novo review, we have adjusted the contract price by considering the economic terms of the existing lease, a normal discount rate and the adjusting factors considered by the court. We still, however, find no basis to disturb the valuation fixed by the district court.

Other matters shown by the evidence relative to the lease must also be considered in regard to adjustments. A board witness testified that commercial property is usually purchased subject to a lease. The fact the premises had a lease, guaranteeing a reasonable income for several years, has to be weighed as a positive factor against evidence of the negative effect on the value of downtown Cedar Rapids retail space due to the opening of a new shopping center in southwest Cedar Rapids and the addition of space for forty stores in an enclosed mall at Lindale Plaza, another shopping center in Cedar Rapids.

No error appears in the result reached by the court on this issue raised by the board, although the effect of the lease on the sale price in this abnormal sale should have been considered by the court as a factor when weighing whether the contract sale price should be adjusted upward, downward, or left undisturbed in determining the property's market value.

**III. Did taxpayers meet their burden of proof?** The board next contends taxpayers failed to meet their burden of proving the assessor's valuation was excessive. The crux of the board's claim is that plaintiffs did not offer any competent evidence as to the actual value of the property.

What we have said in Divisions I and II responds to this contention. The evidence of the contract sale price and the adjustments considered to avoid distortion of market value was probative as bearing on the market value and ultimately the actual value of the property.

In addition, taxpayers presented other evidence on the nature and condition of the building, which may be considered by the court under the sales prices approach to valuation. Cf. *Bartlett & Company Grain v. Board of Review of the City of Sioux City*, 253 N.W.2d 86, 88 (Iowa 1977) (comparison of sales prices of similar grain elevators). They also presented evidence as to the availability and unavailability of persons interested in purchasing the property, which evidence shall be considered in arriving at market value. § 441.21(1). Henry Haegg, a co-trustee owner, and Robert C. Kenny, a disinterested witness, testified for plaintiffs that under a sales price approach to valuation the fair market value of the property was $140,000 and $150,000, respectively.

There is no merit in the board's contention that taxpayers failed to present any competent evidence as to the actual value of their property.

The board's two witnesses testified the valuation to be $191,246, the assessed valuation, and $250,000, respectively. One witness testified the assessed valuation was

determined by using a residual technique in valuing the building at $41,000 and the land at $72,000 and adding $80,000 as the value of improvements made by the tenant. This method produced a gross value of $193,000, which somehow became the assessed valuation of $191,246. We disapproved that method of valuing the land and building separately and then adding them together in *Maytag Company v. Partridge*, 210 N.W.2d 584, 587–88 (Iowa 1973) and *Tiffany v. County Board of Review In and For Greene County*, 188 N.W.2d 343, 349 (Iowa 1971). Evidence showed the improvements only cost $72,000 and the board's witness admitted that fact could lower the assessed valuation determination by $8,000. Therefore, by the board's own admission its valuation of the property was subject to question.

Without unduly extending our discussion of the evidence and based on our de novo review of the record, we hold taxpayers sustained their burden of proving the assessor's valuation was excessive.

*IV. Was the court's valuation supported by substantial evidence?* The board says the court's valuation of $150,000 was not supported by substantial evidence.

We disagree for the reasons stated in the previous divisions.

Whether specifically discussed or not, we have considered all contentions made by the board and find them without merit or else they do not affect the result reached herein.

The district court was correct in its ultimate valuation of this property. The case is affirmed.

AFFIRMED.