Jared F. KILKER, a Minor, By and Through Kirby F. KILKER, his Father and Next Friend; and Kirby F. Kilker, Individually, and Marlene K. Kilker, Plaintiffs–Appellants,

v.

James MULRY, M.D., and Mercy Hospital, Council Bluffs, Iowa, Defendants–Appellees.

No. 87–595.

Court of Appeals of Iowa.

Dec. 22, 1988.

Daniel B. Cullan and Edward H. Jelinek of Cullan, Cullan & Morrison, Omaha, Neb., for plaintiffs-appellants.

John M. French of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for defendant-appellee Mulry.

John R. Douglas and David A. Blagg of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, Neb., for defendant-appellee hospital.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Jared Kilker was born on October 7, 1982, at Mercy Hospital in Council Bluffs. During the moments before his birth, his mother was discovered to have placenta previa, a condition in which the placenta lies in front of the baby and blocks the baby's path of egress into the birth canal. This condition requires that delivery be done by Caesarean section.

In the present case, the existence of placenta previa was suspected a few minutes before birth by Mrs. Kilker's attending physician, Dr. Mulry, and by nurses who were on the scene. However, Dr. Robert Pierson, an obstetrical specialist called in by Dr. Mulry, was unconvinced. He inserted an investigative tool called an "amniotic hook" into Mrs. Kilker's birth canal. This device ruptured the misplaced placenta and caused a massive hemorrhage. Mrs. Kilk-er was rushed into surgery, and Jared was immediately delivered by Caesarean section. However, he had already suffered a loss of blood to the brain, and he was born with severe and permanent brain damage.

Jared and his parents later filed two separate medical malpractice lawsuits. The suit against Dr. Pierson resulted in an $850,000 settlement in favor of the Kilkers, and that suit is not involved here. In the present lawsuit, the defendants were Mrs. Kilker's attending physician, Dr. Mulry, and the hospital where the birth occurred, Mercy Hospital of Council Bluffs.

The Kilkers' primary theory of malpractice against the latter defendants was that the condition of placenta previa should have been diagnosed earlier. They argue that an earlier firm diagnosis would have prevented the catastrophic exploratory procedure performed by Dr. Pierson and would have allowed other precautions to prevent hemorrhage. They argue further that an earlier diagnosis would have been possible if Mrs. Kilker's prior episodes of vaginal bleeding had been adequately treated and recorded. Allegedly, the absence of records of the prior episodes of bleeding misled Dr. Pierson on the fateful day.

The Kilkers' malpractice suit against Dr. Mulry and the hospital was tried to a jury, which returned a verdict for the defendants. The Kilkers have appealed from the resulting judgment.

I

The Kilkers contend their evidence established the negligence of Dr. Mulry and the hospital as a matter of law. They, therefore, contend the district court erred by denying their motion for directed verdict.

 Our scope of review is on assigned error. Iowa R.App.P. 4. In determining whether a jury question was engendered when a party seeks a directed verdict, we apply the same principles as the trial court; specifically, we view the evidence in the light most favorable to the non-moving party, regardless of whether such evidence is contradicted, to determine if reasonable minds could differ on the issue. *Schuller v. Hy–Vee Food Stores, Inc.*, 407 N.W.2d 347, 349 (Iowa App.1987).

If reasonable minds could differ, the issue is for the jury. *Id.* It is incumbent on the plaintiff moving for a directed verdict to present substantial evidence on each element of the claim to determine if a reasonable trier of fact could find for the plaintiff. *Id.* Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Id.*

Pursuant to Rule of Appellate Procedure 14(f)(10), the following proposition is deemed so well-established that no authority need be cited in support of it: "Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law." We find no exceptional case here.

■ Our review of the record reveals that substantial evidence was presented that: (1) Marlene Kilker did not hemorrhage in the manner associated with placenta previa at any time before Dr. Pierson's use of an amniotic hook on October 7, 1982; (2) The care and treatment provided by Dr. Mulry and the Mercy Hospital nursing staff during the prenatal period, courtesy or observation visits, and on October 7, 1982, was appropriate; (3) The care and treatment of and procedures performed by either Dr. Mulry or the Mercy Hospital nursing staff did not contribute to or cause any harm to Jared or Marlene Kilker; (4) Jared Kilker was a normal, healthy fetus until the time that Dr. Pierson used the amniotic hook which caused a massive hemorrhage; (5) The use of the amniotic hook by Dr. Pierson caused a massive hemorrhage and the bleeding caused the brain damage condition from which Jared Kilker now suffers; (6) Dr. Pierson knew that placenta previa was suspected when he entered the case.

Reviewing these facts in the light most favorable to the defendant, we conclude that reasonable minds could differ on the issue presented, therefore, the facts generated a jury question. We hold that the trial court did not err in denying the plaintiffs' motion for a directed verdict. In addition, we find that the jury verdict is supported by substantial evidence.

## II.

■ The Kilkers next contend that the district court erred by refusing to strike a certain juror or to declare a mistrial because of her presence. The juror in question had served as a volunteer in a gift shop at the defendant Mercy Hospital. The juror forgot to mention this affiliation during voir dire; she did speak up after opening arguments but before the presentation of any evidence. At this point the plaintiffs had no more peremptory strikes available to them, but they requested either the juror's removal for cause or a mistrial. They contend the district court erred by refusing to grant either form of relief.

Juror misconduct is grounds for a new trial only if it was calculated to, and it was reasonably probable that it did, influence the verdict. *State v. Cuevas*, 288 N.W.2d 525, 535 (Iowa 1980). Even if we could determine that there was misconduct here, which we cannot, the record indicates that it was not designed to, nor did it, influence the jury verdict. We decline to reverse or grant a new trial on these grounds.

## III.

The Kilkers' remaining issues concern their attempt to present evidence suggesting that the hospital might have altered its records after Jared's birth to remove any references to earlier vaginal bleeding. The Kilkers wanted to suggest that the hospital had altered records in an attempt to avoid liability for the absence of an earlier diagnosis.

■ The Kilkers attempted unsuccessfully to present both direct testimony and rebuttal evidence from an expert witness on altered documents. The Kilkers contend the district court erred by excluding the direct testimony of this expert on the ground the expert's name had not been disclosed to the defendants; they argue the defendants were aware of the expert's identity and proposed testimony, even if they had not been formally notified.

The trial of this case was scheduled for February 10, 1987. The record reveals that the earliest the defendants knew that Harold Moon, the witness in question, would be called as one of plaintiffs' expert witnesses was January 27, 1987. This is when plaintiffs filed supplemental answers to defendants' interrogatories which were in response to defendants' motion in limine. The plaintiffs had been in possession of a report from this expert witness since June of 1986.

Iowa Rule of Civil Procedure 125(c) states:

If a party expects to call an expert witness when the identity or the subject of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the information described in subdivisions (a)(1)(A)–(C) of this rule, as soon as practicable, but in no event less than thirty days prior to the beginning of trial except on leave of court. If the identity of an expert witness and the information described in subdivisions (a)(1)(A)–(C) are not disclosed in compliance with this rule, the court in its discretion may exclude or limit the testimony of such expert, or make such orders in regard to the non-disclosure as are just.

There is not much question that the supplemental answers were filed by the plaintiffs less than thirty days prior to trial. In addition, the plaintiffs did not seek leave of the court to file their answers less than thirty days before trial. Pursuant to Iowa Rule of Civil Procedure 125(c), the trial court, in its discretion, could therefore exclude Harold Moon's expert testimony.

As the trial court stated:

... it would be grossly unfair to the Defendants to allow Plaintiffs to utilize a witness, an expert witness, with respect to an area of scientific expertise which the Plaintiffs had been aware of and had a report from since June of 1986, that being an area which would require the Defendants opportunity to retain experts, make investigation to counter anything Harold Moon would testify to.

The Court does not speculate as to what effect the testimony of Harold Moon might have had in this case, but again, the court believes in the interest of fair play in this case withholding of Harold Moon and the failure of Plaintiffs to disclose him to the Defendants when they had information on his report seven or eight months prior thereto is certainly a sufficient basis for excluding his testimony.

We agree. We find no abuse of discretion in the trial court's decision on this matter. "[A]n abuse of discretion [is found only] ... when such discretion is exercised on grounds or for ... reasons clearly untenable or to an extent clearly unreasonable." *Hubby v. State*, 331 N.W.2d 690, 697 (Iowa 1983). We find no untenable reason for the trial court's decision.

Rule 125 is a discovery rule. Its purpose is to avoid surprise to the litigants and to allow the parties to formulate their positions on as much evidence as is available. *Lambert v. Sisters of Mercy Health Corp.*, 369 N.W.2d 417, 422 (Iowa 1985). The rule itself provides that if the identity of an expert witness is not disclosed in the manner described, the court in its discretion may exclude the testimony of such expert. Iowa R.Civ.P. 125(c).

The Iowa Supreme Court has held in a number of cases that the failure to comply with a discovery order may result in the imposition of sanctions. But the violation of a discovery order is not a prerequisite for the imposition of sanctions for in *Sullivan v. Chicago & Northwestern Transp.*, 326 N.W.2d 320, 324 (Iowa 1982), the supreme court determined that violation of discovery rules alone may warrant sanctions.

Thus in *Sullivan*, the defendant railroad waited until shortly before trial to retain an expert, which it then identified. *Id.* The trial court ruled that the railroad had consciously withheld the name of its expert until three weeks before trial and excluded the expert's testimony as a sanction for the railroad's abuse of discovery. *Id.* Also,

when the railroad answered interrogatories, it claimed that it inadvertently omitted the name of an eyewitness (Weets). *Id.* When the omission was discovered, it supplemented the answers to interrogatories. *Id.* The trial court also ruled that the eyewitness's testimony would be excluded. *Id.* On interlocutory appeal, the supreme court affirmed the trial court's ruling and stated:

> The imposition of discovery sanctions by a trial court is discretionary and will not be reversed unless there has been an abuse of discretion. [citations omitted] The railroad argues the trial court did abuse its discretion in the exclusion of the testimony of its crossing expert and of Weets (eyewitness).

> \*　　\*　　\*　　\*　　\*　　\*

> We find no abuse. The railroad learned in September, 1980 that the plaintiff had retained an expert to testify that the cross was extra-hazardous. It waited, according to its own version of the facts, until January of 1982 (three weeks before trial) to retain its own expert. In the meantime it continually sought to depose plaintiff's expert.

> The exclusion of Weets' testimony, while harsh, does not seem to be an abuse either. The railroad answered interrogatories in September of 1980 in which it failed to disclose Weets' name as an eyewitness. An accident report filed by the crew listed Weets' maiden name as an eyewitness and was shown to plaintiff in March of 1981. The railroad argues plaintiff had actual knowledge of Weets from that point on. On the other hand, the railroad claims it did not know of Weets when it answered plaintiff's interrogatories in September of 1980. It is not reasonable for the railroad to argue that the plaintiff should be charged with the knowledge of Weets and it should not.

326 N.W.2d at 324–25.

In *White v. Citizens Nat'l Bank of Boone,* 262 N.W.2d 812, 816 (Iowa 1978), the trial court sanctioned plaintiff's failure to comply with Iowa Rule of Civil Procedure 125 by refusing to permit testimony as to damages. On appeal, the Iowa Supreme Court stated:

> We hold trial courts have inherent power to enforce our discovery rules and have discretion to impose sanctions for the litigant's failure to obey them.

> \*　　\*　　\*　　\*　　\*　　\*

> We do not agree with plaintiff that the failure of supplement under present circumstances must amount to a "knowing concealment".... "The *subjective explanation* for the default is *irrelevant.* It makes no difference whether it was due to *failure to prepare for trial* or to an *intentional* purpose to gain the benefit of *surprise.* The rule bars the result without regard to cause, except for those beyond control."

> We hold the trial court did not abuse its discretion in rejecting the proffered testimony on damages.

262 N.W.2d at 816–17.

In *Wernimont v. International Harvestor Corp.,* 309 N.W.2d 137, 139 (Iowa App. 1981), plaintiff brought a products liability action based on defective design. The defendant filed interrogatories asking plaintiff to list all experts. *Id.* Following a pretrial conference, the court ordered plaintiff to provide its list of experts no later than April 12. *Id.* Plaintiff did not file a response until April 16. *Id.* On defendant's motion, the court struck the April 16 amendment to interrogatories and prohibited plaintiff from calling any expert witnesses with respect to liability. *Id.* At the conclusion of the trial, the defendant's motion for directed verdict was granted. *Id.* Plaintiff appealed claiming abuse of discretion. *Id.* at 143. In discussing that issue, we stated:

> Plaintiffs argue, however, that trial court's order of June 20, 1979, was erroneous and constituted an abuse of discretion. We note that the practical effect of this ruling was to foreclose plaintiffs from engendering a jury issue concerning defendant's liability. From our review of the record, we believe plaintiffs have failed to preserve this issue for review since they made no offer of proof as to the substance of any expert's testi-

mony. Nonetheless, addressing the issue on the merits, we find no abuse of discretion in the trial court's ruling.

Imposition of such sanctions is vested in the discretion of the trial court and we will not reverse such an order unless there has been an abuse of that discretion. [citations omitted]. It is not necessary that a party's disobedience of discovery orders be willful in order to bring about sanctions. [citations omitted].

After examination of the entire record, we cannot conclude that the June 20 order prohibiting plaintiffs from introducing expert testimony was an abuse of the trial court's discretion. More than two years elapsed between defendant's initial service of the interrogatories on plaintiffs and the plaintiff's answers to the question relating to the experts they intended to call as witnesses. Plaintiffs gave reasons for their inability to do so earlier; however, as *Haumersen [ v. Ford Motor Co.,* 257 N.W.2d 7 (Iowa 1977) ] indicates, the fact that disobedience of discovery orders is not willful does not necessarily preclude sanctions as were imposed here. We find no basis for reversal on this issue.

309 N.W.2d at 143–44.

The exclusion of Mr. Moon's testimony was not an abuse of the trial court's discretion. *Id.* at 420.

The plaintiffs also contend they should at least have been allowed to present this expert for rebuttal testimony, after the defense allegedly "opened the door" to such rebuttal testimony by inquiring into the authenticity of documents. The trial court found, and we agree, that nothing was developed at that point in the trial where the matter was discussed which would permit rebuttal testimony. Rebuttal testimony has been defined as testimony " 'that explains, repels, controverts, or disproves evidence produced by the other side.' " *State v. Bakker,* 262 N.W.2d 538, 543 (Iowa 1976) (court quoting *State v. Miller,* 229 N.W.2d 762, 770 (Iowa 1925)).

As it relates to plaintiff's contention that the trial judge predetermined that Mr. Moon's testimony could not be used in re-

buttal, we note from the record the following statement made by the trial judge:

Until the record is made by the plaintiff and defendant in the case, the court is really not in a position to determine at this time whether or not they might be appropriate witnesses in the case.

The court also stated:

With respect to any attempt by plaintiffs to call witnesses whose testimony has been prohibited by this ruling as rebuttal witnesses the court will determine at the close of defendant's testimony as to whether or not such testimony will be allowed.

The trial court did not make a predetermination that Mr. Moon could not be used as a rebuttal witness. On the contrary, the trial court clearly stated that it would make that determination at the close of defendant's testimony. We find no merit in these contentions of the plaintiff.

■ Finally, plaintiffs' counsel requested a jury instruction which shifted the burden to defendants to prove that their records had not been destroyed, altered, corrupted, and falsified. The trial court refused. We agree with the trial court. The record does not support the giving of a spoliation or suppression instruction.

In this respect, the plaintiff further alleges that the trial court erred in not admitting evidence of spoliation. The basic principle of spoliation is explained in *Wigmore* as follows:

It has always been understood—the inference, indeed, is one of the simplest in human experience—that a party's ... suppression of evidence by ... spoliation ... is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause. 2 *Wigmore, Evidence* § 278, p. 133 (Chadbourn Rev.1979). But so far as a spoliation or suppression partakes of the na-

ture of *fraud*, it is open to the larger inference already examined, ..., namely, a consciousness of the weakness of the whole case. *Id.* at § 291, p. 229.

Except for the exclusion of Mr. Moon's testimony, the plaintiff does not point to any part of the record where he was precluded from giving evidence as to spoliation. It is true that Mr. Moon was precluded from testifying, but the exclusion of his testimony was grounded on failure to timely list him as an expert witness, not on evidentiary grounds. The plaintiff does not dispute that he was permitted to examine and cross-examine as to whether the records had been altered, changed, or timely entered.

We also conclude that the trial court did not err when it refused to instruct the jury in such manner as to shift the burden to defendants to prove that their records had not been altered or falsified. The record does not support the giving of this type of an instruction.

For each of the foregoing reasons, we affirm the trial court.

AFFIRMED.