**SECURITY MUTUAL INSURANCE AS-SOCIATION OF IOWA, Appellee,**

v.

**BOARD OF REVIEW OF the CITY OF FORT DODGE, IOWA; Lynn Schultz, Chairman and Presiding Officer; and Clarence M. Hilton, Fort Dodge City Assessor, Appellants.**

No. 90–384.

Court of Appeals of Iowa.

Jan. 29, 1991.

Maurice C. Breen of Price and Breen, Fort Dodge, for appellants.

James L. Kramer of Johnson, Erb, Latham, Gibb & Carlson, P.C., Fort Dodge, for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Defendant Fort Dodge Board of Review, its presiding officer, and the Fort Dodge City Assessor appeal a district court order lowering its assessed value of a commercial building owned by plaintiff Security Mutual Insurance Association of Iowa. Appellants allege numerous errors, including that the court heard issues not raised before the board, admitted evidence contrary to rules of procedure and evidence, improperly shifted the burden of proof, and acted without substantial evidence. We affirm.

(1)

The subject of the appeal is a commercial office building in Fort Dodge. The City of Fort Dodge conducted a mass reappraisal of commercial property in 1987. As a result, the city assessed the value of the building at $478,130 effective January 1, 1988. The building was then owned by the Federal Land Bank Association of Fort Dodge and the Production Credit Association of the Midlands (FLB/PCA). FLB/PCA timely protested the valuation on May 5, 1988.

The preprinted two-page "Petition to Board of Review" submitted by FLB/PCA provided six reasons for protest. These reasons echo language in the 1987 Code of Iowa, section 441.37(1), which reads, in relevant part:

[The] protest must be confined to one or more of the following grounds:

*a.* That the said assessment is not equitable as compared with assessments of other like property in the taxing district. . . .

*b.* That the property is assessed for more than the value authorized by law, stating the specific amount which the protesting party believes the property to be overassessed, and the amount which the party considers to be its actual value and the amount the party considers a fair assessment.

*c.* That the property is not assessable and stating the reasons therefor.

*d.* That there is an error in the assessment and state the specific alleged error.

*e.* That there is fraud in the assessment which shall be specifically stated.

In addition to the above, the property owner may protest annually to the board under the provisions of section 441.35, but such protest shall be in the same manner and upon the same terms as heretofore prescribed in this section.

FLB/PCA struck out the first five reasons, corresponding to the grounds in subsections (a) through (e) in its protest. In effect, it relied on the last, unnumbered paragraph in section 441.37(1). The last reason for protest provided on the form states: "6. That there has been a change downward in value since the last assessment because: (Chapter 441.35, Iowa Code)." FLB/PCA elaborated in the space provided as follows: "Independent Commercial Real Estate Appraiser valued prop-

erty at $300,000." On May 11, 1988, the board of review authorized a new valuation of $391,140. The board took this action citing its "Increased obsolescence 20%."

The FLB/PCA timely appealed to district court pursuant to Iowa Code section 441.-38. FLB/PCA alleged in its petition that the assessment was for more than the value authorized by law and that the assessment was discriminatory. While this litigation was pending, FLB/PCA entered into a sales agreement with Security Mutual Insurance Association of Iowa for $275,000. The contract was completed on November 22, 1988, but the deed was not delivered until January 4, 1989. Security Mutual was then substituted as the plaintiff in this action.

Security Mutual's experts testified that the building was worth $275,000 and $300,-000. Appellants' expert set the value at $396,621. The district court concluded that the sale by FLB/PCA to Security Mutual was an arm's length transaction and that the purchase price was indicative of the building's fair market value. Because the FLB/PCA was leasing a portion of the building, the court adjusted the sale price and set fair market value at $291,000.

Appeals of assessment valuations are in equity. Iowa Code § 441.39 (1987). Our review, therefore, is de novo. Iowa R.App.P. 4. "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court, but is not bound by them." Iowa R.App.P. 14(f)(7).

(2)

■ Appellants complain that the district court considered issues not raised before the board of review. Specifically, Security Mutual (as substituted plaintiff) petitioned the board of review pursuant to the last, unnumbered paragraph of section 441.37(1) and section 441.35, but Security Mutual petitioned the court to find (or in fact the court found) that the assessment was in excess of the value authorized by law pursuant to section 441.37(1)(b). Appellants

contend this was a violation of section 441.-38, which provides: "No new grounds in addition to those set out in the protest to the board of review as provided in section 441.37 can be pleaded [in an appeal to the district court]. . . ."

Section 441.37(1) provides five specific and exclusive grounds for appeal of an assessment. That section provides that those grounds may be urged before the board of review in the year of the assessment. The last, unnumbered paragraph of section 441.37(1), however, provides that "the property owner may protest annually," and section 441.35 allows "any aggrieved taxpayer [to] petition for a revaluation" in "any year after the year in which an assessment has been made." Nevertheless, if a taxpayer protests in a subsequent year, "such protest shall be *in the same manner* and *upon the same terms as heretofore prescribed* in [section 441.-37(1)]." Iowa Code § 441.37(1) (1987) (last, unnumbered paragraph) (emphasis added). Thus, the legislature has unambiguously required subsequent-year protests to specify at least one of the five exclusive grounds in section 441.37(1) "in the same manner and upon the same terms" as though making a same-year protest.

The disputed assessment was effective beginning January 1, 1988. The protest was filed on May 5, 1988, and the taxpayer relied upon the last, unnumbered paragraph in section 441.37, but indicated that the assessed value exceeded the appraised value. Thus, the taxpayer inappropriately specified it was pursuing a subsequent-year protest pursuant to section 441.35, but it properly specified "in the same manner and upon the same terms" as a same-year protest that the property had been "assessed for more than the value authorized by law." Iowa Code § 441.37(1)(b) (1987).[1]

Appellants concede that the board acted on the basis of increased obsolescence and that this is a ground for reduction under section 441.37. It is clear to this court, as it was to the district court, that the reason

1. The "value authorized by law" under section 441.37(1)(b) is "the fair and reasonable market value." Iowa Code § 441.21(1)(b) (1987).

"Market value" essentially is defined as the value established in an arm's-length sale of the property. *Id.*

for protest specified by the board indicates that the board determined that the assessment value was greater than authorized by law, pursuant to section 441.37(1)(b). This is the same reason urged by the taxpayer before both the board and the district court.

We are left with two extremely narrow and highly technical issues. Is a protest which is urged because "the property is assessed for more than the value authorized by law" as a subsequent-year protest a different ground than a protest which is urged because "the property is assessed for more than the value authorized by law" as a same-year protest? If it is a different ground, when the district court had determined that the taxpayer's petition was properly considered a same-year protest, did the court err by proceeding on "new grounds" in violation of Iowa Code section 441.38? Neither our statutes nor our case law provides us guidance in answering these questions.

Because section 441.37(1) mandates that subsequent-year protests "be *in the same manner* and *upon the same terms as heretofore prescribed* in [section 441.-37(1)]" (emphasis added), we conclude that the protest grounds are identical. It is only the dates on which the same grounds may be urged and on which a revaluation may go into effect that differ. The manner in which the board of review considered the protest seems to prove this out. The record also tends to show that the appellants treated the petition as a same-year protest. We therefore hold that the grounds that "the property is assessed for more than the value authorized by law" urged and heard before the board of review were the same grounds urged and heard before the district court notwithstanding the different procedural consequences. The essence of the protest (the "ground") remains the same regardless of the year in which the protest is lodged or in which the revaluation is granted.

■ Security Mutual also alleged on appeal that the assessment was discriminatory. This very clearly was not urged before the board of review and was a new ground on appeal to the district court. Security Mutual contends the theory was not pursued before the district court, and indeed, we find no reference to it in the court's order. We hold that the issue should not be and was not considered on appeal.

■ If we presume that the technical differences between same-year and subsequent-year protests render the section 441.-37(1) grounds different in different years, we are persuaded that no error has occurred. The record demonstrates that the board knew and understood that FLB/PCA was making a protest in the same year as the assessment. The record further shows that the board acted on the reason specified, *i.e.*, that the assessed value exceeded fair market value, and granted same-year relief.

The purpose of section 441.38's prohibition of new grounds on appeal is readily apparent. Such rules prevent unfair surprise and extending litigation by retrying the case on appeal. This is not unlike our rules requiring questions to be presented to the original tribunal before, and only before, they are presented on appeal. It is quite similar to our requirement that the theory presented be the same on appeal as it was before the original tribunal. *See Shill v. The Careage Corp.*, 353 N.W.2d 416, 420 (Iowa 1984), and authorities cited therein. The supreme court has noted that fair notice of the claim must be given. *See id.* (citing *Gosha v. Woller*, 288 N.W.2d 329, 331 (Iowa 1980)).

Clearly, these purposes have not been contravened by the appeal to the district court in this case. Appellants understood the nature of the relief sought by the taxpayer at every stage in these proceedings, and the taxpayer's theory for relief has not changed. In fact, its action shows that the board may have acquiesced in the theory in the proceedings before it. Consequently, we can divine no prejudice suffered by the appellants in allowing the appeal to go forward before the district court.

We conclude that the district court considered and ruled on precisely the same issues raised before the board of review. We therefore hold that the district court

did not err in considering the appeal by considering and ruling on issues not raised in the taxpayer's petition to the board of review contrary to Iowa Code section 441.-38.

(3)

■ Appellants argue that the district court erred in admitting and considering testimony of expert witness that had not been identified within the time specified in Iowa Rule of Civil Procedure 125(c). They contend that because Security Mutual failed until three days before trial to respond to an interrogatory asking Security Mutual to specify its experts, the district court abused its discretion in allowing the experts' testimony into evidence.

Appellants served interrogatories on April 18, 1989, asking Security Mutual to identify its experts for trial. Security Mutual did not answer these interrogatories until July 17, three days before trial and the date on which the depositions of the experts were taken. Appellants lodged their objection and proceeded to cross-examine Security Mutual's experts. The parties agreed that the depositions were for the express purpose of reading the testimony into the record and that appellants could reopen the depositions if desired. The district court admitted and considered the depositions over appellants' objection.

Rule 125(c) requires a party to disclose the identity of experts and information about their testimony upon inquiry and to supplement the disclosure "as soon as practicable, but in no event less than thirty days prior to the beginning of trial except on leave of court." The rule further specifies that if a party fails to comply with the rule, "the court *in its discretion may* exclude or limit the testimony of such expert, or make such orders in regard to the nondisclosure as are just." (Emphasis added.)

The district court thus has considerable discretion over the admission of all or part of expert testimony that is disclosed late or not at all. It is well settled, moreover, that we will not reverse imposition or denial of discovery sanctions absent an abuse of discretion. *Sullivan v. Chicago & Northwestern Transp.*, 326 N.W.2d 320, 324

(Iowa 1984); *Kilker v. Mulry*, 437 N.W.2d 1, 5 (Iowa App.1988). An abuse of discretion occurs when such discretion is exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Kilker*, 437 N.W.2d at 4.

Although the district court's ruling on this issue was not directly responsive to appellants' objection under rule 125(c), it did find that they had ample time for discovery and, at least impliedly, were not surprised by the testimony. The district court unambiguously stated that it believed the sanction of excluding expert testimony to be inappropriate under the circumstances. Security Mutual notes that appellants do not contend on appeal that they have been prejudiced. Because the theory on appeal was not altered by these expert appraisers whose primary task was placing a dollar value on the property, it is not clear that they were prejudiced. We conclude that the district court did not exercise its discretion on untenable grounds or to an unreasonable extent, *Kilker*, 437 N.W.2d at 4; therefore, we hold that the district court did not abuse its discretion.

(4)

■ Appellants argue that the district court erred in admitting expert opinion without proper foundation as required by Iowa Rule of Evidence 705. They contend that the answers of appraiser William Dooley show that the expert did not "disclose the underlying facts or data on cross-examination" to support his opinion as required by rule 705. In particular, the expert's report included comparisons of five properties within the taxing jurisdiction along with fifteen others, and the expert could not identify the five properties or testify whether his opinion would be different if only those five properties were considered. Appellants maintain that their argument rests on the existence of foundation, not credibility.

We find this contention without merit. It is within the discretion of the district court to exclude the expert's testimony. *Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 639 (Iowa 1988). We will not interfere with such decisions unless they

exhibit a manifest abuse of discretion. *Id.* (citing *State v. Dvorsky,* 322 N.W.2d 62, 64 (Iowa 1982)). Having examined the record and noting that the trial court sat as the finder of fact, we find appellants' characterization of the expert testimony misses the mark. There was foundation in the record for the testimony and accompanying exhibits such as would raise admission of the expert testimony above an abuse of discretion. We hold that the district court did not abuse its discretion.

### (5)

Appellants argue that the district court erred in finding appellee had met its burden of proof through offering evidence of two competent, disinterested expert witnesses as to market value pursuant to Iowa Code section 441.21(3). Specifically, they contend that, because appraiser Scott McHenry was the broker for FLB/PCA in the sale to Security Mutual, he was an interested witness. Appellants concede McHenry was competent and Dooley was disinterested. We have already addressed appellants' challenge to Dooley's competency.

The record shows that FLB/PCA employed McHenry to appraise the property before it was offered for sale. McHenry also testified that he was the broker for FLB/PCA. After the sale, however, he had no further interest in the sale or this litigation.

Notwithstanding appellants' failure to argue in more than conclusory terms and their failure to cite specific page references in authorities relied upon, Iowa R.App.P. 14(a)(3), 14(e), we have examined this issue carefully. Of the authorities cited, only *Richards v. Hardin County Board of Review,* 393 N.W.2d 148 (Iowa 1986), is remotely on point. In that case, the supreme court held the taxpayer's testimony was not disinterested, but not per se incompetent. *Id.* at 150. The district court must "weigh the evidence in its totality and make an independent determination on the valuation issues," and may consider all competent testimony. *Id.* Whether a witness is disinterested affects only burden shifting, and does not affect whether the

witness's testimony may be considered on the merits. *Id.* None of the cases supports appellants' contention that a broker is an interested witness per se.

We agree with Security Mutual that the appropriate test may be stated as whether the witness "will either gain or lose by the direct legal operation and effect of the judgment, or that the legal evidence for or against him in some other action." *Lyon County Nat'l Bank v. Estate of Winter,* 214 Iowa 533, 539–40, 242 N.W. 600, 603 (1932) (quoting *Wormley v. Hamburg,* 40 Iowa 22, 25 (1874)); *see also In re Hoppe,* 289 N.W.2d 613, 617 (Iowa 1980) (specifying ordinary meaning be given statutory language unless legislature requires technical meaning). This appears to be the position taken by the supreme court in *Richards,* 393 N.W.2d at 150, with respect to the taxpayer, and in *Wormley v. Hamburg,* 40 Iowa at 25, wherein the court stated: "The interest which disqualifies a witness must be a present, certain, and vested interest, and not an interest uncertain, remote, or contingent." Plainly, McHenry was not an interested witness in this sense. We hold that the trial court did not err in shifting the burden of proof to appellants based upon the testimony of two competent, disinterested witnesses.

### (6)

Appellants argue that the district court erred in admitting evidence of a sale that did not occur in the year of listing and valuation. They make this contention because they allege the transfer of the property did not occur until the year after the assessment. They also ask us to create an exception to *Foreman and Clark of Iowa v. Board of Review,* 286 N.W.2d 169 (Iowa 1979). We must decline the invitation.

Security Mutual and FLB/PCA finalized their sales agreement on November 22, 1988. They did not record this contract. FLB/PCA delivered and Security Mutual recorded the deed on January 4, 1989. The district court held that there was an equitable conversion and that the actual sale price properly could be considered in determining the value of the property.

*Foreman and Clark* allows a contract sale price to be "admissible to show the market value in the year of assessment as it would bear on the actual value at the date of assessment." 286 N.W.2d at 172. This rule does not contemplate requiring sale contracts to be public record. We are unpersuaded by appellants' argument that failure to adopt a new rule would cause havoc for boards of review. The present rule merely specifies what shall be admissible to show market value; it neither mandates reopening cases nor relying on uncertain or unreliable evidence.

We agree with the district court that an equitable conversion occurred in the assessment year and is admissible evidence under *Foreman and Clark*, 286 N.W.2d at 172. Additionally, section 441.38 permits "additional evidence to sustain [the protest] grounds [to] be introduced" in an appeal to the district court. Consequently, we must hold that the district court did not err in admitting and considering evidence of the contract between FLB/PCA and Security Mutual.

(7)

◼ Appellants argue that the district court erred in reducing the assessed value without substantial, competent, and admissible evidence. We have already considered the competency and admissibility issues and will not repeat that discussion here. Appellants' last contention essentially is that Security Mutual failed to produce substantial evidence in support of its valuation.

Under Iowa Code section 441.39, "[t]he [district] court shall consider all of the evidence and there shall be no presumption as to the correctness of the valuation of assessment appealed from." The burden of proof initially is with the taxpayer, but if the taxpayer "offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon [those] seeking to uphold [the] valuation to be assessed." Iowa Code § 441.21(3) (1987).

Security Mutual did offer competent evidence from two disinterested witnesses, buttressed with an actual sale price in the assessment year. Although there was a lease-back provision in the contract, which may raise a question about whether the sale was "normal," *see City of Atlantic v. Board of Review*, 234 N.W.2d 880, 884 (Iowa 1975), we are satisfied that the district court carefully considered the circumstances and made an appropriate adjustment to the contract price to reflect the value of the lease-back option. Appellants' other complaints about the evidence are without merit.

(8)

Having considered the record de novo, we find no reversible error committed by the district court. We affirm the district court's finding that the assessed value of the subject property should be set at $291,-000.

AFFIRMED.

HABAB, J., takes no part.