# IN THE COURT OF APPEALS OF IOWA

No. 19-0425
Filed May 12, 2021

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**JONATHAN LEVI HART,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wayne County, Patrick W. Greenwood, Judge.

Jonathan Hart appeals his convictions of eluding pursuing law enforcement and criminal mischief. **REVERSED AND REMANDED.**

Arielle M. Lipman of Lipman Law Firm, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, and Lisa Manoogian, Law Student Intern, for appellee.

Heard by Bower, C.J., and Doyle and Ahlers, JJ.

**AHLERS, Judge.**

This case calls for us to reinforce a well-established principle—a prosecutor is not permitted to call a criminal defendant as a witness. We augment the principle with a corollary—defense counsel who permits a prosecutor to call the defendant as a witness without objection fails to perform an essential duty.

Jonathan Hart appeals his convictions of eluding with excessive speed and criminal mischief. He argues his counsel was ineffective for failing to object when the State called him as a rebuttal witness and the district court improperly admitted evidence of text messages and telephone calls. Finding the ineffective-assistance-of-counsel claim dispositive so as to require a new trial, we need not address the admission-of-evidence issue in full.

## I.  Background Facts and Procedures.

Late in the evening of July 28, 2019, Deputy Cody Jellison with the Wayne County Sheriff's Office received a report from dispatch that a man, W.M., had called to report that Hart was outside W.M.'s home and making threatening phone calls and text messages. Deputy Jellison drove his marked patrol vehicle toward W.M.'s rural home. As the deputy approached the home, he encountered a blue Ford Taurus with a male driver going the opposite direction. Deputy Jellison believed Hart's father owned the Taurus, so the deputy turned around to follow the Taurus. Soon after Deputy Jellison turned around, the driver of the Taurus accelerated the vehicle to a high rate of speed, ran a stop sign, and swerved into the other lane. Deputy Jellison activated his lights and siren to stop the driver of the Taurus, but the driver continued traveling on the gravel road at speeds up to forty miles per hour or more above the speed limit. Deputy Jellison eventually lost

track of the Taurus, so he backtracked to an intersection and realized the car went through the intersection, crashed into a set of farm gates, traveled through a field, and reentered the road. Deputy Jellison requested assistance in locating the fleeing vehicle. Knowing Hart lived in adjoining Appanoose County, Deputy Jellison made a request to the dispatcher to contact Appanoose County officers to be on the lookout for the vehicle.

After being notified of the situation, Deputy Jonathon Printy with the Appanoose County Sheriff's Office responded by driving to a location where he could observe the home of Hart's father from his marked patrol vehicle. Deputy Printy soon saw a Taurus turn into the father's driveway. A short time later, a pickup emerged from the same driveway. The pickup drove toward Deputy Printy's location, but it abruptly turned off the road and into a field as it neared Deputy Printy's marked patrol vehicle, suggesting to Deputy Printy that the driver was avoiding him. Deputy Printy followed the pickup into the field and soon located it, but no one was inside the pickup. Deputy Printy determined the pickup was registered to Hart and a company Hart owned. Deputy Jellison soon arrived, and the two deputies inspected the Taurus in the father's driveway. They found evidence consistent with it having been the vehicle involved in the chase, including a warm-to-hot engine, apparently fresh damage, fresh green paint on the hood,[1] and grass and other foliage stuck in the bumper and undercarriage of the car.

---

[1] The farm gates that were crashed into by the fleeing vehicle were green.

They did not locate the driver of either vehicle that night. Hart was later charged with eluding with excessive speed[2] and fourth-degree criminal mischief.[3]

The case proceeded to a jury trial. Deputies Jellison and Printy testified for the State, and Hart testified in his defense. Hart testified he was at home during the time in question. Hart also testified the pickup seen leaving his father's home was purchased by a company Hart owns, and this company has several employees with access to the pickup. Hart denied knowing who was driving the Taurus or the pickup that night. On cross-examination, Hart testified he only "know[s] of" W.M., and he denied sending threatening text messages to W.M. that night.

On rebuttal, the State called Deputy Jellison to testify about screenshots from a cell phone showing Hart sent two text messages and made two telephone calls to W.M. that night. The State also introduced the screenshots into evidence.[4]

---

[2] Under Iowa Code section 321.279(2)(a) (2018):

> The driver of a motor vehicle commits an aggravated misdemeanor if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked official law enforcement vehicle that is driven by a uniformed peace officer after being given a visual and audible signal as provided in this section and in doing so exceeds the speed limit by twenty-five miles per hour or more.

[3] The criminal mischief charge resulted from damage to the gates. "Any damage, defacing, alteration, or destruction of property is criminal mischief when done intentionally by one who has no right to so act." Iowa Code § 716.1. Fourth-degree criminal mischief occurs when damage is more than $200.00 but less than $500.00. *Id.* § 716.6(1)(a)(1).

[4] Deputy Jellison testified W.M. sent the screenshots to law enforcement. One screenshot shows two text messages W.M. received from a certain phone number on July 28 at 11:26 p.m.: "U better not be with my wife"; and "Down [name of road on which W.M.'s residence is located]." Two more screenshots show call logs with two missed calls from the same phone number on July 28 at 11:24 p.m. and 11:41 p.m. The chase began at approximately 11:46 p.m.

The State then called Hart as a rebuttal witness, and Hart verified he had sent the text messages and made the telephone calls shown in the exhibit.

The jury found Hart guilty as charged, and the district court sentenced him accordingly. Hart appeals.

## II. Standard of Review.

We review ineffective-assistance-of-counsel claims de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). We generally review a "decision to admit or exclude evidence for an abuse of discretion." *State v. Neitzel*, 801 N.W.2d 612, 621 (Iowa Ct. App. 2011).

## III. Ineffective Assistance—Hart as Rebuttal Witness.

During trial, the State called Hart as a rebuttal witness to question him about evidence admitted earlier in rebuttal. Hart argues his counsel was ineffective for failing to object when the State called him as a rebuttal witness.[5]

To prevail on his ineffective-assistance-of-counsel claim, Hart must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Clay*, 824 N.W.2d at 495 (quoting *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008)). "To prove counsel failed to perform an essential duty, the defendant 'must show that counsel's performance was deficient,' meaning counsel 'made errors so

---

[5] We note Hart's trial counsel was a different attorney than appellate counsel. We also note Iowa Code section 814.7, as amended, removes a defendant's ability to pursue claims of ineffective assistance of counsel on direct appeal. This amendment became effective on July 1, 2019. *State v. Macke*, 933 N.W.2d 226, 230 (Iowa 2019). The amendment does not apply to cases appealed before the effective date of the statute. *Id.* at 231. Due to the fact notice of appeal was filed in this case prior to July 1, 2019, the statutory amendment does not apply and we can address the claim as part of this direct appeal.

serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

The first issue we must decide is whether to address Hart's claim on the merits because "we rarely address ineffective-assistance claims on direct appeal and instead preserve such claims for postconviction relief." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006). "Because '[i]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel,' postconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance." *Id.* (alteration in original) (quoting *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992)).

Here, we discern no reasonable trial strategy for defense counsel allowing the State to call Hart as a witness. Even if Hart wanted to testify again to respond to the rebuttal testimony of Deputy Jellison, that could have been done by calling Hart in surrebuttal, when Hart's counsel could have controlled the scope and direction of Hart's testimony, rather than subjecting Hart to examination by the State on the State's terms. *See* Iowa Rs. Crim. P. 2.19(1)(a)(6) (permitting surrebuttal), 2.20(1) ("strictly confin[ing]" the State's examination of a defendant called to testify by the defense "to the matters testified to in the examination in chief"). In short, there could be no provident trial strategy in permitting the State to call Hart as a witness. Therefore, we will address Hart's ineffective-assistance-of-counsel claim on its merits.

Hart points to several grounds his counsel could have raised in objecting to his rebuttal testimony. We find Hart's rules-based ground sufficient to resolve the issue, so we do not address his constitutional claims. *See Hines v. Ill. Cent. Gulf R.R.*, 330 N.W.2d 284, 287 (Iowa 1983) ("We consider constitutional issues on appeal only when another question is not decisive.").

Iowa Rule of Criminal Procedure 2.20(1) states a criminal defendant may be a "witness in the defendant's own behalf, but cannot be called by the state." The State offers no explanation for how it could call Hart as a rebuttal witness under rule 2.20(1). Because the State violated the plain language of rule 2.20(1) by calling Hart as a rebuttal witness, his counsel breached an essential duty by failing to object.

We turn next to the prejudice component of Hart's ineffective-assistance-of-counsel claim. "The crux of the prejudice component rests on whether the defendant has shown 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Kuhse*, 937 N.W.2d at 628 (quoting *Strickland*, 466 U.S. at 694).

Here, our confidence in the outcome of the trial is undermined because of the testimony provided by Hart when he was called in rebuttal by the State. The evidence against Hart was far from overwhelming. The State did not call as a witness the alleged victim of Hart's harassment who made the initial call to police. No eyewitness identified Hart as the driver of the vehicle and no witness placed him at the scene where the chase began or where it ended. Instead, the State relied on circumstantial evidence built primarily on the claim that Hart had been

sending threatening text messages that could be interpreted as admitting he was near W.M.'s residence where the chase began, coupled with the evidence connecting Hart to the location and ownership of the vehicles involved in the chase and afterward.

The text messages were a key link in the circumstantial evidence chain. However, prior to Hart's testimony when called on rebuttal, the State's evidence connecting Hart to the text messages was weak. Hart had previously testified during the defense's case-in-chief that he had not sent threatening text messages. On rebuttal, the State introduced screenshots of and testimony about text messages purportedly between Hart and W.M. through the testimony of Deputy Jellison. This evidence was particularly weak because Deputy Jellison acknowledged he did not know if the phone number associated with the text messages was connected to Hart in any way.[6] Once Hart was called as a witness, Hart's connection to the text messages was solidly established through the following testimony:

---

[6] Hart objected to the introduction of the screenshots of the text messages on lack-of-foundation grounds. Because we are granting a new trial on other grounds, we need not and do not decide whether the screenshots of the text messages were admitted in error. That said, given the failure to present testimony as to the authenticity of the screenshots, Deputy Jellison's lack of knowledge of whether the phone number from which the text messages were sent was Hart's phone number, and the lack of testimony from anyone who could identify the number as being connected to Hart, the admissibility of the text message evidence is suspect at best. Although this issue may arise on retrial, the foundation that will be laid on retrial may very well differ from that laid in this trial, so there is not much benefit to addressing the issue further. Suffice it to say, on retrial, if the State wishes to introduce evidence of the content of the text messages, it will be up to the State to present sufficient evidence to authenticate that evidence.

Q. Mr. Hart, on July 28, 2018, were you the owner or was your business the owner of [the sending phone number shown in the exhibit]? A. Yes.

Q. And so then am I correct . . . that you did, in fact, text message [W.M.] on July 28, 2018? A. Text message, not threatening.

Q. Well, you specifically told [W.M.] that you were on the dead-end road that he lives on, correct? A. Did not.

Q. Well, you tell me what "Down [street name]" means, then. A. "Down [street name]" means down [street name].

Q. Okay. A. I did not say that I was present.

Q. Okay. And then not only did you text message him, you called him too, didn't you? A. Correct.

Q. Two different times on July 28, 2018. A. Yes.

[Prosecutor]: I have no additional questions, Your Honor.

The State's rebuttal questioning continued on redirect:

Q. Mr. Hart, why would you call [W.M.] at 11:24 at night on July 28, 2018? A. Check status.

Q. Check status of what? A. Apparently my wife, I guess, might have been with him. . . .

Q. And then why would you call [W.M.] at 11:41 p.m. on July 28, 2018? A. At the same evening? Same difference.

Not only did this testimony firmly establish Hart was the sender of the text messages and the maker of the phone calls—a connection that had not been firmly established prior to Hart's rebuttal testimony—the testimony also shored up Hart's motive for being in the location of W.M.'s residence. Further, it potentially undermined Hart's credibility because (1) he admitted having sent the text messages when he had previously testified that he had not sent "threatening" text messages (a semantics distinction the jury may have viewed as deceptive), and (2) it was made clear Hart more than "knew of" W.M., as he claimed during his original testimony.

The jury should have never heard Hart's rebuttal testimony, as the State was prohibited from calling Hart as a witness by rule. In almost all criminal cases,

the State could plug holes in its case of varying sizes if it could just call the defendant to the stand.  But, the prosecutor's quiver does not include that arrow.  Had defense counsel objected, the objection would have been required to be sustained by operation of rule 2.20(1).  We have little doubt Hart's rebuttal testimony contributed significantly to strengthening the State's case in what was otherwise a less-than-clear case.  As a result, our confidence in the outcome of the trial is undermined, and Hart has demonstrated prejudice.  He is entitled to a new trial as a result.

**IV.  Conclusion.**

Finding Hart's trial counsel ineffective for failing to object to the State calling Hart as a witness and finding Hart was prejudiced as a result, we vacate Hart's convictions of both charges and remand for a new trial on those charges.

**REVERSED AND REMANDED.**